## No. 32.

SUCCESSION OF S. M. FARMER—ON OPPOSITION TO ACCOUNT OF ADMINISTRATRIX.

An administratrix who changes her domicil is still bound to account to the Court of her former domicil, where the succession has been opened.

But a tutrix who has changed her domicil, cannot be called to account to the Court of her former domicil, which has appointed her, and can only be sued before the Court of her new domicil, even for the purpose of rendering her tutorship account. This has become a rule of property which this Court will not reverse.

An administratrix cannot sue the succession she represents, and, therefore, prescription will not run against her on her claims against the succession, as long as she is administratrix.

APPEAL from the First Judicial District Court, parish of Caddo. *Bell,* Judge *ad hoc.*

Looney & Elstner for Opponent and Appellant.

Land & Land for Administratrix.

First.  Prescription does not run against an administratrix in respect to her claims against the succession which she is administering.

Second.  Inventories are not conclusive ; they may be contradicted or explained.  Error may be shown.

Third.  A tutor of the minor heir may relieve an administrator of further administration without the formality of a final account.  The administrator is not responsible for property turned over to such tutor, and the court of the tutorship has jurisdiction to decree the sale of such property to effect a partition, although the succession was opened in a different parish.

Fourth.  When an administratrix is also tutrix, she should first settle her account as administratrix, but no execution should issue, and when sued for an account of the tutorship, she has the right to offset the balance against her as administratrix by sums disbursed for the maintenance and support of the minor heir.

The opinion of the Court was delivered by

POCHÉ, J.   S. M. Farmer died in this parish in January, 1854, leaving
67

two minor children, issue of his marriage with his surviving wife, Elizabeth Jane Bates, now the wife of G. A. F. Poole, and the administratrix of his succession.

The succession of Farmer was duly opened in this parish, an inventory was taken of his property, and his widow was appointed and qualified administratrix of his succession and confirmed as natural tutrix of the two minor children, William S. and Atlanta B. Farmer. William S. Farmer died when eight years of age, and his interest in the estate vested in his mother and sister, in the proportions fixed by law.

This suit was begun by a rule taken by the surviving child, Atlanta, now of age, and the wife of William A. Bishop, to compel her mother to file an account of her administration of the Farmer succession, and of her tutorship of plaintiff in the rule.

The administratrix excepted to the jurisdiction of the parish court of Caddo, on the ground that she was a resident of Bossier parish, and not amenable to the court of Caddo, either for an account of administration or for an account of tutorship.

The first branch of her exception was overruled, and the latter maintained.

The succession which she administered having been opened in the parish of Caddo, and having never been settled or closed, no other tribunal could entertain jurisdiction over the same, and such jurisdiction could not be affected by the change of domicile of the administratrix. But as to the tutorship, it has been frequently held by our courts that it follows, like the minors, the person of the tutor, and must be adjudicated upon in all its incidents by the court of the tutor's last domicile.

While our own construction of the law would lead to a different conclusion, and to rule that the court, which is originally vested with jurisdiction of the succession, and of the person of the tutor of the minors, and of their property, and which confers the delicate mandate to the tutor, should be the forum where he ought to account for his stewardship ; yet, in the face of numerous decisions to the contrary, we must recognize the doctrine of *stare decisis,* which has now become a rule of property, and we hold that the ruling of the District Judge, on both branches of the exception, should be maintained.

The administratrix then filed her account, which showed on the debit side the amount of the inventory, to wit : the sum of $10,698 62, and on the credit side, the sum of $12,724 35. The credits claimed by the administratrix consisted mainly of alleged errors of excess in the inventory, of deductions for slaves emancipated, of her paraphernal property alleged to have been received and converted to his own use by her husband, of property turned over to the tutor of her ward, of debts paid for the succession, and of real estate on hand.

Succession of Farmer.

The heir filed an opposition, asking for the rejection of almost all the items on the credit side of the account, and asked for additions of omitted property in the inventory. After two trials, and a laborious examination into long and intricate accounts, involving serious questions of law, and considering evidence making up a very voluminous record, the District Judge sustained several of the oppositions urged to the account, overruled others, and concluded by finding in favor of the succession and community, a balance of $2537 68 against the administratrix, which he decreed to belong to the administratrix and her daughter, in the proportions of one half in her own right, and one fourth of the other half, as heir of her deceased son, to Mrs. E. J. Poole, and the balance to opponent, Atlanta Bishop. The court further reversed the right of Mrs. Poole to offset against her daughter such claims as she might have against her on account of her tutorship, and ordered a stay of execution of the judgment until the final liquidation of her tutorship.

Opponent has appealed from the judgment, and Mrs. Poole, joining in the appeal, prays that the judgment be amended in several particulars in her favor.

The facts bearing on the issue are substantially as follows :

In 1850, Eliza Jane Bates, who was then the widow of L. B. McMullen, married S. M. Farmer, who died in January, 1854, leaving the minor heirs mentioned above.

In April, 1855, she married James Bryan, without being retained by the family meeting as tutrix of her minor children, and thus forfeited said tutorship ; and in the spring of 1857, she married G. A. F. Poole, her present husband, who was appointed dative tutor of the minors W. S. Farmer and A. B. Farmer, under the advice of a family meeting in the parish of Bossier.

At the time of her marriage with Farmer, Mrs. Poole held a claim of some $2000 against Dempsey McMullen, for slave hire, in payment of which McMullen transferred two lots in the city of Shreveport in full ownership to her husband, S. M. Farmer.

She was also the owner of a judgment on a promissory note of $2000, subscribed by R. E. Bates, endorsed by Knox & Lawson, which sum, it is alleged, was collected and converted to his own use by Farmer.

It appears that at the date of the marriage Farmer owned a farm, several slaves and some personal property, and that in 1853, he sold one of his slaves to Nathan Pickett for $1000, and that he bought two other slaves from Mrs. T. T. Land for $1500, but that he died before completing said purchase by authentic act, although he had taken the slaves in his possession, it being understood between him and his vendor that the act of sale would be passed only on the payment of the purchase

price, which was paid by his widow a short time after his death, taking the title in the name of the succession.

Sometime in 1858 Mrs. Poole took a judgment in the District Court of Bossier against her minor children for $2000, alleged to be due to her as her paraphernal funds, collected and used by her husband, from D. McMullen, and in execution of said judgment the two lots in Shreveport were adjudicated to her for $1000, and in her account she claims credit for the balance of said judgment in the sum of $1308 and interests.

Soon after the appointment of G. A. F. Poole, as tutor of the Farmer minors, Mrs. Poole turned over to him personal property of the minors, and the settlement of some debts due by the succession, amounting to $482 50; but, beyond this, she performed no act of administration to the knowledge of the courts.

We shall now revise those rulings of the lower court which, in our opinion, were erroneous.

We think the judge erred in striking out of the inventory the item of $1000, amount of a draft drawn by Nathan Pickett, and placed in the inventory by the notary and the appraisers.

The judge gave as reasons that the draft was not sufficiently described as to date, maturity, etc., and by further reason of the testimony of Mrs. Poole, who says that she has no recollection of such draft, that she never saw it, and never collected it. The evidence shows that she had at that time moved to her mother's residence in Bossier parish, and that she was represented in the succession proceedings by her agent, C. C. Bates. The act of the notary and of the appraisers is conclusive of the existence of the draft in question among the assets of the succession, and it was the duty of the administratrix to have taken possession of and collected the same, in default of which she is responsible for the amount thereof. The fact of the sale by Farmer of a slave to Nathan Pickett, the drawer, for the sum of $1000, explains the consideration and the existence of the draft, which should be charged against the administratrix.

The court also erred in crediting the administratrix with the sum of $2000, alleged to have been collected by Farmer on the judgment against Bates and others. The evidence does not prove this fact; the administratrix, on this point, testifies that she believes that he collected it, as *she* did not; the record fails to show whether the judgment was ever settled or not. The judgment was rendered before Farmer's marriage with her, and the presumption is that he did not collect it. It was incumbent on the administratrix to show, affirmatively, that the collection was made as alleged. The item for interests allowed on this claim must, of course, be also rejected.

The court was in error in refusing to allow credit for the sum of

$2000, realized from the claim against Dempsey McMullen by means of the transfer to Farmer of the two lots in Shreveport.

It is true that the judgment rendered thereon by the Bossier District Court was an absolute nullity on its face, for want of jurisdiction in that court to adjudicate upon a succession pending in the parish of Caddo, and for the reason that the administratrix, being the legal representative of the succession, could not sue the estate, and for the further reason that she could not sue the minors, on account of [the succession which they could and did accept only with the benefit of inventory. But, on the other hand, the District Judge having decreed the two lots purchased with these very funds, to have fallen into the community, and having correctly charged the administratrix with $2000, as the value of the same, he manifestly erred in sustaining the plea of prescription against this item.

One of the very grounds of nullity of the judgment rendered by the Bossier District Court was the legal inability of Mrs. Poole to sue the succession represented by her. This inability must also operate in her favor, so as to shield her from the plea of prescription interposed to any legal and valid claim which she had against the succession which she administered. Being incapacitated from judicially enforcing her claim by the law itself, prescription is necessarily suspended, and the doctrine of *contra non valentem*, etc., is clearly applicable to administrators, curators, or tutors thus situated. The case of the Succession of Durnford, in 8 R. 488, and 11 R. 183, is in point, and is conclusive on this issue. See 12 R. 155, 23 A. 682.

This sum must bear interest of five per cent from the date of dissolution of the community, in January, 1854.

Opponent earnestly complains of the ruling of the court in allowing credit to accountant for the sum of $1500, paid by her to Mrs. Land for the two slaves sold and delivered to Farmer before his death, but we find no error in this ruling.

The purchase had been made by Farmer before his death, the slaves were in his possession, and thus we have a contract which his legal representative could have enforced against his vendor, and the widow was justified in completing the purchase.

As the community was dissolved at the time, and as no funds were inventoried as belonging to the community, the record fails to show that the funds used in this transaction were those of the community, and the presumption fortified by the widow's testimony is that they were her separate funds, realized, as we believed, on her judgment against Bates and others. The credit was properly allowed, but the court erred in omitting to allow interest on this sum from the date of its expenditure and use, as above stated.

After a careful scrutiny of the evidence, and after due consideration of the law applicable to the case, we find the judgment of the lower court correct in all other particulars.

The following statement of accounts is, in our opinion, an accurate liquidation of the administration of the succession :

*Debit.*

| | |
|---|---|
| Amount of inventory by the notary...........................$10,698 | 62 |
| Add value of lots in Shreveport ........................... 2,000 | 00 |
| Add slave hire due by administratrix........................ 743 | 75 |
| Deduct value of slave, Amy, sold by Farmer, $500. | |
| | |
| Total of inventory....................................$12,942 | 37 |

*Credit.*

| | |
|---|---|
| Amount paid Mrs. Land for slaves......................... $1,500 | 00 |
| Interest thereon, 5 per cent from January, 1854, to date...... 1,255 | 00 |
| Amount collected on debt of D. McMullen................... 2,000 | 00 |
| Interest thereon, 5 per cent from January, 1854, to date...... 1,675 | 00 |
| Commission of administratrix on $12,942 37................. 323 | 67 |
| Fees of attorneys—Beach, $100, Land & Taylor, $250........ 350 | 00 |
| Costs of clerk and notary................................. 50 | 00 |
| Taxes paid, $163 63. Costs of this account, $50........... 213 | 63 |
| Funeral expenses......................................... 50 | 00 |
| Property turned over to tutor............................. 482 | 50 |
| Land on hand............................................ 492 | 50 |
| Value of slaves emancipated.............................. 3,800 | 00 |
| Balance due by accountant................................ 749 | 97 |
| | |
| Equal to inventory.....................................$12,942 | 37 |

The balance thus obtained, save possible errors of calculation, fixes the just liability of the administratrix to the succession.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be amended in the following particulars :

1st. In striking out of the inventory the amount of the Pickett draft of $1000, which is recognized as an asset of the succession.

2d. In allowing to the administratrix credit for the R. E. Bates note and judgment of $2000 and interests, which are rejected.

3d. In rejecting the credit of $2000, amount of the McMullen debt, which is allowed with legal interest from January, 1854, to date.

4th. In omitting to allow interest on the credit of $1500, amount paid by the widow to Mrs. Land, for the two slaves, on which interest is hereby allowed to date from January, 1854, to this day.

And it is ordered that said judgment be affirmed in all other respects, and that appellee pay the costs of appeal.