Cochran vs. Violet et al.

## No. 9673.

### R. L. COCHRAN vs. MRS. E. A. VIOLET ET AL.

| 38 | 525 |
|----|-----|
| 115 | 102 |
| 38 | 525 |
| 123 | 818 |

Exceptions which affect the very foundation of the suit should be decided *in limine*, and: should not be referred to the merits.

A demand for the payment of the price of property, which is in fact an action for the specific performance of a contract of sale, is inconsistent with a demand for the rescission of the sale for non-payment of the price, and on a timely exception by defendant, plaintiff should be required to elect between the two inconsistent demands.

A final judgment rejecting, on the ground of prescription of four years, an action by a minor against his tutor for acts of the tutorship, cannot sustain the plea of *res adjudicata* to a subsequent action between the same parties for an account of the usufruct by the surviving parent of the property of his child, after the termination of the usufruct.

The legal effects of a purchase by the surviving father or mother of the community property at a sale thereof at public auction to pay debts, are not the same as a purchase by the same party of said community property at the price of estimation, on the advice of a family meeting, under Article 343, C. C. Under the latter sale, the property remains. mortgaged to secure the price; while under the former, no such mortgage is recognized by law. The only mortgage is in favor of minors on account of the tutorship, but not. for the usufruct.

The action for account of the usufruct is barred by the prescription of ten years only, to be. computed from the termination of the usufruct.

Cochran vs. Violet et al.

**A** PPEAL from the Ninth District Court, Parish of Tensas. *Newell*, Judge *ad hoc.*

*Wade R. Young* for Plaintiff and Appellee.

*Percy Roberts* and *Steele & Garrett* for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J.  Plaintiff sues his mother for his share in the price of adjudication to her of the property hitherto belonging to the community between herself and his deceased father, of which she had had the usufruct until she contracted a second marriage in October, 1881, and for a recognition of a legal mortgage to secure the payment of the sum due to him.

As there were three heirs, issue of the marriage, he fixes his share at one-sixth of the price of adjudication, after deduction of the debts of the community paid by the widow and usufructuary.

He prays in the alternative for an account of administration of the succession and community of his deceased father, so as to judicially settle the amount accruing to him.  And he finally prayed for the rescission of the sale of the community property in default of payment of his share of the purchase price, and to be recognized as the owner of one-sixth of said property.

His suit was met by two exceptions:

1st.  That his petition contained inconsistent demands, and that he should be compelled to elect between his demand for payment of the balance due him and his prayer for rescission of the sale.

2d.  In her second exception defendant urged numerous points, the principal of which was the plea of *res adjudicata*, predicated on the judgment rendered by this Court in a suit between the same parties, reported in 37 Ann. 221; and denying plaintiff's right to demand the rescission of the adjudication to his mother generally and also in the absence of an allegation of a previous tender of the parties of the price admitted to have been paid; and she finally pleaded the prescription of four, five and ten years.

In keeping with the irregular but prevailing practice which we recently took occasion to discountenance, the district judge referred all these exceptions to the merits, when the ends of justice required a decision of several of them at least *in limine.*  A. A. Farmer vs. W. C. Hafley, 38 Ann. (not yet reported.)

For answer, the defendant denied any indebtedness to plaintiff, averring specially that, owing to the value of the slaves included in the

.adjudication, and to the debts of the community which she had paid, .she was fully discharged in law for the entire purchase price of the community property and for her usufruct thereof.

The judgment below was mainly in favor of plaintiff, but it rejected his prayer for recognition of a legal mortgage. The trial judge found the sum of $16,114 28 due to plaintiff as his share in the community property subjected to the usufruct of the surviving widow, but he allowed her the privilege, by further accounting within a reasonable time, to reduce the balance thus found against her.

The defendant appeals, and plaintiff moves for an amendment of the judgment so as to finally adjust the specific amount due him, without any further accounting by the widow in usufruct, and to obtain recog- . nition of his legal mortgage.

After this unavoidably long statement of the very complicated pleadings and of the complex judgment which we are called to review, we now reach the examination of the merits of the controversy.

1st. A demand for the purchase price of property, which is in the nature of a suit for specific performance of a contract of sale, is certainly inconsistent with a prayer for the rescission of that very sale. Hence, the lower court was in error in refusing to compel plaintiff to elect under the first exception urged by the defendant.

But as an end must be reached in this apparently interminable litigation, we shall not correct this error by remanding the cause.

In her second exception, defendant puts directly at issue the right of plaintiff to sue for the rescission of the sale under any circumstances; and under that exception we have the means of setting that question at rest, and of thus eliminating it from further consideration in the progress of the cause.

From the record it appears that the purchase of the community property in this case did not result from an adjudication of the same to the . widow at the price of estimation on the recommendation of a family meeting, under the provisions of Article 343 of the Civil Code, but that it was operated by means of a public sale by the sheriff, ordered by the court at the instance of the surviving widow and testamentary executrix, in order to pay the debts of the succession and community, at which sale the widow was empowered to purchase under the provisions of Article 1146 of the Code.

Under the effect of such a sale, the balance of the purchase price which accrued to her children after the payment of the community debts, which the purchasing widow has the right to retain in her hands, does not legally represent any portion of the purchase price, and is not

retained by her as purchaser, but it passes into her hands as funds. belonging to her children, of which she has the legal usufruct. In such a transaction she deals in a double capacity; as a purchaser she pays. to herself as usufructuary the shares of the purchase price accruing to her children. Hence, she ceases to be a debtor for the purchase price,. but under her rights of usufruct she becomes a debtor to her children. for the shares accruing to them, to be accounted for at the termination of the usufruct. 24 Ann. 79, Gaiennié vs. Gaiennié.

It is therefore clear that her children are not her creditors as vendors, and that she is not their debtor as vendee; hence, they are not in a condition to sue for a rescission of the sale. Wade vs. Murray,. 35 Ann. 546.

We therefore conclude that the exception to plaintiff's right to claim the rescission was well taken, and hence that part of his demand is fully disposed of.

We now take up the plea of *res adjudicata*, which rests on our judgment in the case reported in the 37th Annual of our reports, p. 221.

It is true, as argued by defendant, that the cause of action in the present case, and in that suit, arises from the same transaction: the purchase of the community property by the surviving wife; but the nature of the demand is not the same in the two cases. In the former case the contest was for an account of tutorship, and we rejected plaintiff's demand for such an account on the ground that his right thereto was barred by the prescription of four years; holding at the same time that certain judgments purporting to establish the amount of the widow's liability to her children growing out of her purchase of the community property, and which had been set up as means of interrupting prescription, were not moneyed or executory judgments having the effect of the thing adjudged between the parties, but as affording merely *prima facie* proof of indebtedness by the tutor to his ward.

In the present case we are called on to enforce the alleged rights of plaintiff to an account from his mother for her usufruct of his property,. consisting of his share in the proceeds of the sale of the community property purchased by her, on the ground that the usufruct was terminated by her second marriage in October, 1881.

It therefore appears that our judgment in that case does not affect. the rights which plaintiff seeks to enforce in the present case, and hence the plea of *res adjudicata* cannot be maintained in its entire scope.

It is good, however, as to the nature and effect of the various judgments relied on by plaintiff in both cases as the legal foundation determining the precise amount due to him by his mother, on account of her

tutorship in the former suit and on account of her usufruct in the present litigation. We shall therefore treat them here as we did there, as *prima facie* proofs of the liability which they purported to establish—and shall use them as the basis of the settlement which we propose to make between the parties in this controversy.

We now reach the plea of prescription of four, five and ten years.

Having already distinguished the issue in this case from the demand for an account of tutorship, it follows that the prescription of four years, which under the law is a bar to the action of minors against their tutors for the acts of tutorship, does not apply to the action for an account of usufruct. C. C. Art. 362; 37 Ann. 223, Cochran vs. Violet; Bedell vs. Calder, 37 Ann. 805.

Our Code does not in terms fix the kind of prescription which can be invoked in bar of the demand for an account from the usufructuary of the property or things which he has held in usufruct. Hence, we have no settled lights to guide us as to which of the five or ten years prescription would apply in such cases. But a mature consideration of the articles of the Code on the subject has led us to the conclusion that such an action is a personal action, not enumerated in any of the artiticles treating of the prescription of either one, three or five years, and that it must be governed by Article 3544 of the Code, which reads: "In general, all personal actions, except those before enumerated, are prescribed by ten years."

The next inquiry must be directed to ascertain the time at which prescription begins to run. It is clear that it cannot run against minors; hence, under that principle, it did not begin to run before the 23d of October, 1875, at which time plaintiff became of age, and this suit was brought on the 4th of April, 1885, therefore within the ten years.

But in actions for account of the usufruct, the correct rule is to date prescription from the time at which the right to demand an account accrued, and in logic and reason, as well as in law, that right accrues only at the termination of the usufruct, just as clearly as prescription on a promissory note must be computed only from the date of its maturity, and not from the date of its execution. No one can be debarred by prescription from the exercise of any right, to be computed from a time at which the right did not exist. The doctrine of "non contra valentem," etc., most unequivocally applies to such actions. 36 Ann. 412, McKnight vs. Calhoun; 32 Ann. 1041, Succession of S. M. Farmer.

Defendant contracted her second marriage on the 15th of October, 1881, at which time her usufruct expired, and that is the date from which prescription must be computed against plaintiff's demand for an

account of the usufruct of his mother. Conceding, therefore, that the prescription of five years could apply in such a case, it is apparent that the plea is not good, as this suit was brought in April, 1885.

Having recognized the right of plaintiff to recover judgment for so much of his funds as had been subject to his mother's usufruct, we must now establish the state of her accounts with him.

But before entering into the facts, we must meet two legal questions which we find at the threshold of the investigation.

1st. The right granted by the judgment to the defendant to present an additional account of the matters connected with her usufruct, is, in our opinion, not sanctioned by law, and hence it must be denied.

Even in giving full effect to the prayer in plaintiff's petition for an account of defendant's administration of his share of the proceeds of which she had the usufruct, we find that she was allowed every opportunity on the trial of the case to give such an account, and that she did present all the elements within her reach toward a full accounting. Even-handed justice to all parties requires that the accounts should now be finally balanced, and we therefore conclude that this feature of the judgment below is erroneous.

2d. Can the defendant be allowed to deduct from the gross proceeds of the sale of the community property the estimated value of the slaves which then formed part thereof?

Without entering into a discussion of the alleged nullity of obligations contracted for the purchase price of slaves, by reason of their subsequent emancipation, we find in the record other and abundant reasons to defeat defendant's proposition on that score. We showed in another part of this opinion that under the operation of law, the surviving widow, being entitled to retain in her hands all that accrued out of the sale and to her children, is legally held as having, as purchaser, fully complied with her bid, and to be therefore and thereby entirely discharged from all her obligations as a vendee; and that her indebtedness, if any, to her children, after paying the community debts, arose from a new obligation, the relation of usufructuary, it follows that she cannot be heard now to urge any defense in mitigation of her obligations under the purchase. She has in law paid for the slaves which she bought at that sale; the debt which she now owes does not arise out of her purchase, but out of her usufruct. Hence, she cannot be allowed the credit of $76,000 which she sets up as the estimated value of the slaves included in her purchase of the 9th of April, 1860. That rule is as just as it is inflexible. On the question of plaintiff's demand for a rescission of the sale, it defeated him because he was not a ven-

dor seeking to enforce claims against his vendee. On this point, and for the same reasons, it must shield him against the pretensions of the defendant, who now erroneously assumes the attitude of a vendee.

The judgment invoked by plaintiff as settling the amount of his mother's indebtedness to him, shows that the amount of the adjudication was $156,470, and that up to that date (1867) she had paid community debts up to the sum of $59,783.25, leaving a balance of $96,687, of which he claims one-third of one-half, say $16,114.     *     *     *

But in the course of the trial, defendant established her right to additional credits which must be allowed her, and which are not seriously controverted.

She is entitled to be credited for the sum of $20,000, as a donation from her mother, which sum was used in paying part of the purchase price of the plantation by her first husband; and to the further credit of $20,000, amount of a debt of the community which she paid; and for an additional sum of $6,000, paid by her on what is known in the account as the "Dunbar mortgage."

She claims $10,000 for that item; it was the amount of the debt, but she compromised it for $6,000; she paid nothing more, she can claim nothing more.

In her answer she claims to have paid four notes of $17,500 each, or $70,000, secured by vendor's privilege on the plantation which was adjudicated to her at the succession sale. She has credit for two of the notes in the judgment of 1867, as included in the credit of $59,783.25, and from her own testimony it appears that she has thus far paid $20,-000 on the two other notes, for which we have already allowed her credit.

This leaves to her debit the sum of $50,686.75, one-sixth of which accrues to plaintiff, thus entitling him to a judgment against her in the sum of $8,447.75.

The next and last question is to ascertain whether he is entitled to the recognition of a legal mortgage to secure that balance.

His counsel bases his right thereto on the provisions of Article 343 of the Civil Code, which regulates the mode of effecting, and the legal mortgage resulting from, the adjudication of the community property in which minors have an interest, to the surviving father or mother, and on Article 3317, which recognizes the same mortgage created by the other article.

But from the recitals already made in this opinion, it appears that the sale in this case was not made under the provisions of Article 343 of the Civil Code, but under the provisions of Articles 990, 991 and 992

of the Code of Practice, touching authorized sales of succession property to pay debts.

There is a vast difference between the mode of making and the effects of such sales.

From the very nature of the sale made under Article 343, there can be no competition and no bids; no other person but the surviving father or mother can there become an adjudicatee; and hence, the effects of that sale are peculiar, and are specially provided for by the law; and one of those effects is that "the property so adjudicated shall remain specially mortgaged for the security of the payment of the price of the adjudication and the interest thereon."

Now, no such mortgage is, or could be, created by law, as resulting from an adjudication under a sale to pay debts. One of the very objects of that sale is to release, instead of creating, mortgages. At such a sale, which is made at public auction, competition is of the very essence of the proceeding, and any person, be it the surviving father or mother, or anybody else, making the highest bid, can become the purchaser. If it be a stranger, the property goes to his hands free of all encumbrances on his paying the price, and the proceeds go into the hands of the succession representative. If the surviving father or mother is the purchaser, and is also the succession representative, the payment is made by operation of law, as twice explained herein above; and no mortgage is provided for concerning the payment of the price.. If the surviving parent is the tutor of the minors, the latter have a legal mortgage on the former's property on account of the tutorship, but not on account of the usufruct, which is regulated by other and different laws. Gaiennié vs. Gaiennié, 24 Ann. 79.

Our laws on the subject of usufructs do not provide for a mortgage on the property of the usufructuary in favor of the owner of the things, money or other property subject to the usufruct. Hence, courts are powerless to recognize or enforce any.

A bond is the only security which the law exacts of the usufructuary, and the father and mother are relieved even from that obligation. C. C. Art. 560.

Plaintiff's claim of a legal mortgage must therefore be rejected.

We note that the judgment below is silent on the subject of interest. Plaintiff is entitled to legal interest from the termination of the usufruct, and under his prayer for amendment he asks for and he must be allowed the same.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended in the following particulars:

1st. In allowing the right to defendant to further reduce plaintiff's claim by further accounting, which right is hereby denied, so as to make the judgment herein absolute and final.

2d. By allowing plaintiff legal interest on his claim from the 15th of October, 1881.

3d. By reducing plaintiff's claim and fixing it at the sum of $8,447.75 (eight thousand four hundred and forty-seven dollars and seventy-five cents).

And that, as thus amended, said judgment be affirmed, at the costs of defendants in both courts.