180 So. 413

**McGUIRE v. MONROE SCRAP MATE-RIAL CO. et al.**

No. 34606.

March 7, 1938.

Rehearing Denied April 4, 1938.

Isaac Abramson, of Shreveport, and Fink & Fink, of Monroe, for appellants.

Bernstein, Clark & Thompson, of Monroe, for appellee.

ODOM, Justice.

Plaintiff alleged that two "Mickey Mack River Rigs," used for "pulling pipe line river crossings, stumps and other such work," were stolen from him in the latter part of 1935, and that these defendants, in some manner unknown to him, had later come into possession of and unlawfully and tortiously appropriated said machines to their own use and benefit. The suit is for the value of the machines.

The defendants denied generally and specifically plaintiff's allegations. Their defense is that they did not appropriate the machines. They also filed a plea of prescription of one year.

The plea of prescription was overruled, and on the merits there was judgment in favor of plaintiff as prayed for. Defendants appealed.

On the Plea of Prescription.

In disposing of this plea, it is necessary to state and discuss some of the facts brought out at the trial.

After the case was tried on its merits and judgment rendered in favor of plaintiff, defendants filed a plea of prescription of one year, which was overruled.

██ This is an action for the value of property alleged to have been illegally and fradulently appropriated by defendants to their own use. In Liles v. Producers' Oil Company, 155 La. 385, 99 So. 339, 342, we said: "It is sufficient to say, therefore, without citing further authorities, that the rule is now well settled in this state that a suit for the value of property wrongfully taken and appropriated is not distinguishable from an action for damages as for a tort or quasi offense, and is prescribed in one year from the time knowledge is received by the plaintiff of such wrongful appropriation."

The above was quoted approvingly in Carter-Allen Jewelry Company v. Overstreet, 165 La. 887, 116 So. 222.

██ This, then, is a tort action, and all such actions are prescribed by one year, Civil Code, art. 3536, and prescription begins to run from the date of the injury, Civil Code, art. 3537.

The property involved consisted of two "Mickey Mack River Rigs," machinery used for the purpose of pulling pipe line river crossings and stumps, and other such work. It is admitted that one of these machines was stolen from plaintiff in September, and the other in December, 1935. The suit was filed on January 15, 1937, more than one year after the machines were stolen. Hence defendants' plea that plaintiff's action is barred by the prescription of one year.

The plea would be good if plaintiff had known who committed the theft, when it was committed, and if the suit had been brought against the thief. Carter-Allen Jewelry Company v. Overstreet, supra.

Plaintiff knows when the thefts were committed, but by whom he does not yet know. Hence no suit against the thief.

Defendants are junk dealers. Certain parts of the stolen machines were found in their possession by plaintiff on April 12, 1936, and this suit was filed against them in less than one year from that date.

Counsel for defendants argue that prescription began to run on the dates the machines were stolen, and in support of their argument cite the case of Carter-Allen Jewelry Company v. Overstreet, supra. That case does not support their theory. Overstreet was a clerk in plaintiff's jewelry store, and a part of his duties was to look after a display of jewelry in the windows. A valuable diamond ring, which was on display in the window, disappeared on November 25, 1919, and was never recovered. Overstreet had custody of the ring when it disappeared. Plaintiff sued him for the value of the ring, on the theory that he either stole it or, through his negligence, permitted another to steal it. But the suit was brought more than one year from the date on which the ring disappeared, and defendant's plea of prescription was sustained.

The reason the plea was sustained is clear. Plaintiff knew that the ring disappeared on November 25, 1919, and he knew, or thought he knew, that defendant

had either stolen it or, through his negligence, had permitted another to steal it. This was the basis of his action against the defendant. The ring having disappeared on November 25, that was the date on which the tort was committed and plaintiff's loss sustained. On that day his cause of action against Overstreet for the value of the ring arose. Plaintiff could have brought suit on that day, and that was the day on which prescription began to run.

Here the case is different. Plaintiff sued defendants for the value of his property, not upon a theory that they had stolen it, but because they had unlawfully and fraudulently appropriated it to their own use. Their unlawful and fraudulent appropriation of the property gave rise to plaintiff's cause of action against them for the value of the property. But plaintiff did not know until April 12, 1936, that defendants had converted his property. So it was impossible for him to bring his suit before April 12, 1936, and he did bring it within one year from that date.

 Prescription began to run against plaintiff's action against these defendants on the day he discovered the fraudulent appropriation of his property. The doctrine or maxim, Contra non velentem agere non currit prescriptio, has been frequently upheld by this court, where from conditions the plaintiff could not possibly bring his suit. Cochran v. Violet, 38 La.Ann. 525; McKnight v. Calhoun, 36 La.Ann. 408; Fernandez v. New Orleans, 46 La.Ann. 1130, 15 So. 378; Succession of Farmer, 32 La.Ann. 1037. See, also, Liles v. Producers' Oil Company, supra.

In the case of Brown v. Clingman, 47 La.Ann. 25, 16 So. 564, plaintiff sued defendant for setting fire to and burning his hotel. Plaintiff knew from the date on which the building was burned that defendant was the incendiary but could not prove it, and waited until he could make the proof before he filed the suit. The court held that the prescription of one year was good and sustained it. In Jones v. Texas & Pacific Railway Company, 125 La. 542, 51 So. 582, 584, 136 Am.St.Rep. 339, this court, in speaking of the case of Brown v. Clingman, said:

"If, in that case, the identity of the incendiary had been unknown, the prescription could not have run, for the bringing of the suit would have been impossible." Citing the case of Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175.

 In the case at bar, plaintiff's cause of action against the defendants for the conversion arose on the date of the conversion, for that was the date on which plaintiff was damaged by the unlawful and fraudulent acts of the defendants. But plaintiff could not sue, could not exercise his right, until he had knowledge of the conversion, which was on April 12, 1936. Plaintiff did not know and was never able to find out when the conversion took place. As soon as he discovered parts of his machines in the hands of defendants, he called upon them for information as to when, how, and from whom they had obtained them. They said they had kept no records and did not know. Under such circumstances it cannot be reasonably said that prescription against plaintiff's cause of action began to

run from the date of the conversion. The testimony shows that defendants themselves had willfully and fraudulently concealed the date of the conversion. Under the provisions of Act No. 273 of 1916, defendants' acquisition of the property was a willful and fraudulent act. Section 1 of that act makes it a crime for any person to purchase willfully and knowingly material commonly known as "junk," unpaid for by the seller or not owned by him. Section 2 provides that, when junk is purchased by a junk dealer, the purchaser must exact a signed statement from the seller that such material has been paid for or is owned by the seller, "and the failure of the purchaser to exact such a statement from the seller shall be prima facie evidence of the fraudulent intent and guilty knowledge on the part of said purchaser within the meaning of this Act, sufficient to warrant a conviction."

The failure of these defendants to exact from the seller of this material the statement required by the act must be construed as a willful and fraudulent concealment of the date of the purchase. For this reason, if for no other, the defendants are in no position to plead that plaintiff should have brought his action within one year from the date of the conversion. Plaintiff could not possibly know that date.

Under all the circumstances disclosed, and in accordance with the rulings in the cases cited above, we think that prescription against plaintiff's action began to run on April 12, 1936, which was the date on which he discovered that defendants had converted his property.

## On the Merits.

On or about April 12, 1936, plaintiff went to the junk yard of the defendants and found certain parts of the machines which had been stolen from him. These were positively identified by plaintiff and other witnesses, who had handled the machines. Plaintiff, it seems, is a mechanical engineer and had personally assembled the parts for, and had built, the machines. He testified that he recognized casting bubbles in some of the parts, which he had noticed before. He recalled that one part of the machines, which was found on defendant's premises, had a stripped off stud. Another witness testified that one who has used machines of this kind can recognize parts of them by markings. Another witness testified that he had operated the machines, had gone over and repaired them, and that he recognized some of the parts found in defendant's junk yard as being the property of plaintiff.

The testimony leaves us in no doubt about the identification of the parts of the machines found on defendants' premises as the property of the plaintiff. When these parts were found, defendants offered to deliver them to plaintiff and further offered to deliver any other parts which might be found in the junk pile. Plaintiff refused to accept these parts and refused to make a search in the enormous pile of scrap material there on the yard. According to defendant's testimony, they bought junk almost every day and piled it all together until an order was received, when it was shipped out, and at times they had scrap iron piled up to a height of 15 to 20 feet.

583

Under the circumstances, plaintiff did not have to accept the return of such parts of his machines as were found, nor was it his duty to search the yard for other parts. Plaintiff having found parts of his property on defendants' premises, it was defendants' duty to explain how, when, and from whom the property was acquired. Defendants, having acquired the property without exacting from the seller the written statement required by Act No. 273 of 1916, were guilty of a fraud and must be classed as purchasers in bad faith.

The testimony shows that parts of the machines found had been severed by blowtorch, and other parts had been unscrewed from the machines. Defendants testified that purchasers of scrap iron required that no piece be above a certain size, and that they used an acetylene blowtorch and large shears to cut the material down to proper sizes. It is possible, but not probable, that the thief had an acetylene blowtorch with which to cut the machines to pieces. It is certain that these defendants did have and use such an instrument in the operation of their business. Under the circumstances, the presumption is strong that defendants got possession of and appropriated plaintiff's machines in their entirety. This presumption is not rebutted by defendants' testimony that they had no idea how they came into possession of those parts which were found on their premises.

The record is voluminous. The trial judge, after hearing all the testimony, reached the conclusion that defendants came into possession of and appropriated plaintiff's machines in their entirety. We cannot say that he erred in his judgment.

The district judge was also convinced that the value placed by plaintiff on his machines was correct. There is ample testimony to support his conclusion on this point, and we shall not disturb the judgment.

For the reasons assigned, the judgment appealed from is affirmed.

HIGGINS, J., absent.