PATRICIA RIVET MURRAY, Judge.
 

 hThe sole issue in this case is prescription. From a judgment sustaining the peremptory exception of prescription filed by the defendants, Hamp’s Construction, L.L.C., formerly known as Hamp’s Enterprise, Inc. (“Hamp’s”), and Charlie Hampton, the plaintiff, Michael Dugas, appeals. We affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In 2001, Mr. Dugas purchased property located at 1201 Governor Nicholls Street in New Orleans, which had situated on it an unoccupied, old house (the “Property”). During Hurricane Katrina, which struck the New Orleans area in August 2005, the Property sustained some damage. In October 2006, Mr. Dugas contracted with Dwayne Thompson to dismantle a portion of a leaning exterior brick wall and to reconstruct it. In November 2006, while Mr. Thompson’s work crew was performing the job, a large section of the wall collapsed, causing damage to the Property. According to Mr. Dugas, Mr. Thompson neither completed the job nor returned to clear the site.
 

 In December 2006, the City of New Orleans (the “City”) notified Mr. Dugas by letter that the Property was in violation of the City’s Building Code, Ordinance 11,625 Section 102.4.1 — “Imminent Danger: Causing, allowing, and or permitting pan unsafe building to remain in a dangerous/hazardous condition that is harmful to the public health, welfare and safety of the public.” The City also notified him that he had ten days to take the following corrective action: “repair and brace the exterior brick wall of the main structure, secure building, and clean site of all debris and materials.”
 

 Also in December 2006, the City entered into an “Imminent Danger Demolition Contract” (the “Demolition Contract”) with Mr. Hampton doing business as Hamp’s. The City hired Hamp’s to “remove existing building, structure, trash and grade lot,” and to “[sjalvage all salvageable materials.” The City ordered Hamp’s to proceed under the Demolition Contract within ten
 
 *1062
 
 days. Hamp’s timely performed the demolition services and was paid by the City for its services.
 

 While Hamp’s was performing its services, Mr. Dugas visited the Property. He observed Hamp’s employees removing bricks from the collapsed wall and removing portions of the scaffolding that were located at the Property. According to Mr. Dugas, Hamp’s employees told him, in response to his inquiries, that Hamp’s was hired by the City to rectify a hazard at the premises.
 

 In November 2007, within one year of the wall collapsing, Mr. Dugas filed this suit against Mr. Thompson and his insurer, American Vehicle Insurance Company, for damages arising from the collapse of the wall and breach of contract. In June 2009, Mr. Dugas filed a first supplemental and amending petition adding Hamp’s as an additional defendant. In his petition, he alleged that Hamp’s was liable to him for improperly removing his materials from the Property. He averred that “Hamp’s cleared and removed all debris from the site, including but not limited to approximately 19,000 bricks and certain scaffolding which were the |splaintiffs property and which he intended to reuse.” He further averred that Hamp’s was jointly liable with Mr. Thompson for the losses he sustained as a result of the removal of the bricks and scaffolding.
 

 In July 2010, Mr. Dugas filed a second supplemental and amending petition adding Mr. Hampton individually as an additional defendant. According to Mr. Dugas, after he filed the prior petition adding Hamp’s as a defendant, he obtained a copy of the Demolition Contract. The purpose of this petition was to make a “technical amendment” to the petition to reflect that the actual parties to the Demolition Contract were the City and Mr. Hampton doing business as Hamp’s. In this petition, Mr. Dugas averred that the Demolition Contract required Hamp’s to salvage the materials and that Hamp’s failed to do so. He further averred that Hamp’s “illegally removed his salvaged materials from his property, including but not limited to valuable old brick, millwork and scaffolding, which have not been returned and for which plaintiff has not been compensated.”
 

 In response, Mr. Hampton and Hamp’s (collectively “the Hamp’s Defendants”) filed peremptory exceptions of no right of action and prescription. The Hamp’s Defendants contended that Mr. Dugas’ claims against them sounded in tort — conversion — and thus were subject to a one-year prescriptive period. Since Mr. Dugas failed to join the Hamp’s Defendants until more than one year after the removal of the materials from the Property, the Hamp’s Defendants contended that the claims against them were prescribed. The Hamp’s Defendants further contended that Mr. Dugas had no right of action under the Demolition Contract because he was not a party to the contract. Following a hearing, the trial court sustained the exception of prescription and dismissed Mr. Dugas’ suit against the Hamp’s Defendants. This appeal followed.
 

 J^DISCUSSION
 

 This case presents both factual and legal determinations for review.
 
 See Farber v. Bobear,
 
 10-0985, p. 11 (La.App. 4 Cir. 1/19/11), 56 So.3d 1061, 1069 (citing
 
 Bell v. Glaser,
 
 08-0279, p. 4 (La.App. 4 Cir. 7/1/09), 16 So.3d 514, 516)(noting that prescription generally is a factual determination);
 
 Peneguy v. Porteous,
 
 01-1503, p. 6 (La.App. 4 Cir. 5/15/02), 823 So.2d 380, 384 (citing
 
 Landry v. Blaise, Inc.,
 
 99-2617, p. 4 (La.App. 4 Cir. 8/2/00), 774 So.2d 187, 190) (noting that appellate review of peremptory exceptions involves the determination of whether the trial court was legally correct). An appellate court reviews a trial
 
 *1063
 
 court’s factual findings under a manifest error or clearly wrong standard of review.
 
 Stobart v. State, Through Dep’t of Transp.
 
 &
 
 Dev.,
 
 617 So.2d 880, 882 (La.1993). When a trial court commits a legal error, an appellate court is required to review the record
 
 de novo. Edwards v. Pierre,
 
 08-0177, p. 9 (La.App. 4 Cir. 9/17/08), 994 So.2d 648, 656.
 

 The applicable prescription statute governing delictual claims is La. C.C. art. 8492, which provides a one-year prescriptive period commencing from when injury or damage is sustained. The applicable prescription statute governing personal actions, including contractual claims, is La. C.C. art. 3499, which provides that, unless otherwise provided by legislation, a ten-year prescriptive period applies. Prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished by it.
 
 Bailey v. Khoury,
 
 04-0620, 04-0647, 04-0684, p. 9 (La.1/20/05), 891 So.2d 1268, 1275. The general rule is that the defendant-mover has the burden of proving prescription. However, if the plaintiffs claim is prescribed on the face of the petition, the burden shifts to |fithe plaintiff to negate prescription by establishing a suspension or an interruption.
 
 Lima v. Schmidt,
 
 595 So.2d 624, 628 (La.1992).
 

 If Mr. Dugas’ claim against Hamp’s is delictual it is prescribed on its face as it was filed more than one year after the date of the alleged conversion of his property.
 

 On appeal, Mr. Dugas advances two arguments in support of his contention that the trial court erred in sustaining the Hamp’s Defendants peremptory exception of prescription. He argues that his claim is a personal action subject to a ten year prescriptive period on the theory of a stipulation
 
 pour autrui
 
 or on unjust enrichment. Alternatively, he contends that, even if his claim is a delictual one, his suit is timely based on two alternative grounds: he and Mr. Thompson are joint tortfea-sors; or
 
 contra non valentem.
 

 We first address Mr. Dugas’ contention that his suit is timely even if determined to be delictual, addressing each of his separate grounds.
 

 Joint tortfeasors
 

 Mr. Dugas contends that the Hamp’s Defendants and Mr. Thompson are joint tortfeasors and that his timely filed suit against Mr. Thompson, which is still pending, interrupted prescription. In support, he cites La. C.C. art. 2324(C), which provides that “[ijnterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.” Mr. Dugas contends that the collapse of the wall set in motion the chain of events that led to the Hamp’s Defendants’ removal of his valuable materials. Mr. Dugas thus contends that the actions of the Hamp’s Defendants and Mr. Thompson, albeit occurring on different days, caused the same loss. According to Mr. Dugas, the Hamp’s Defendants and Mr. Thompson are | f,“joint tortfeasors because together they caused the damage sustained by [Mr.] Dugas.”
 
 [1]
 

 Mr. Dugas cannot prevail on this argument as the record reflects that the trial court granted a partial summary judgment in favor of Mr. Thompson on the issue of
 
 *1064
 
 his liability for any damages caused by the Hamp’s Defendant’s actions. That partial summary judgment was certified as final; no appeal was taken. Therefore, there is a final judgment holding that these defendants are not joint tortfeasors.
 

 Contra non valentem
 

 Mr. Dugas next contends that prescription did not commence to run as to his claims against the Hamp’s Defendants until he obtained a copy of the Demolition Contract and discovered that it contained a salvage provision. He acknowledges that he knew from an earlier date that Hamp’s was responsible for removing the bricks. Nonetheless, he contends that the running of prescription was suspended because the Hamp’s Defendants concealed that they were required by the contract to salvage the bricks. In support of this contention, he cites
 
 McGuire v. Monroe Scrap Material Co.,
 
 189 La. 573, 180 So. 413 (La.1938).
 

 The
 
 Monroe Scrap Material
 
 case relied on the equitable theory of
 
 contra non va-lentem
 
 to find an interruption of prescription until the plaintiff discovered the tort-feasor’s identity. The plaintiff was the victim of a theft, but did not know the thief s identity. When the plaintiff saw the items that were stolen from him at the defendant’s scrap yard, he filed suit against the defendant for taking his |7property. Rejecting the defendant’s contention that the plaintiffs claim was prescribed, the court held that the one-year prescriptive period did not commence to run until the plaintiff obtained knowledge of the thief s identity. Likewise, Mr. Du-gas contends that the one-year prescriptive period did not begin to run on his claim against the Hamp’s Defendants until he obtained a copy of the Demolition Contract, and discovered the salvage provision. He argues that, until this time, he was not aware that these defendants converted his property by failing to comply with that provision. Because his suit was filed within one year of obtaining a copy of the Demolition Contract, he contends that it is timely.
 

 The Hamp’s Defendants counter that the
 
 Monroe Scrap Material
 
 case is distinguishable because the plaintiff in that case had no reason to know the tortfeasor’s identity and sued within a year of learning the tortfeasor’s identity. In contrast, the record establishes that Mr. Dugas was aware of Hamp’s identity in December 2006 when the demolition and removal of the materials from the Property occurred. They contend that prescription began to run at the time of the alleged tortious act of conversion — removal of the materials.
 

 In Monroe Scrap Material, supra, the court noted that the
 
 contra non valentem
 
 theory would not have applied and that the prescription “plea would be good if plaintiff had known who committed the theft, when it was committed.” 189 La. at 578, 180 So. at 414. This is the circumstance present here. Mr. Dugas knew that Hamp’s removed his materials from the Property in December 2006 when the materials were removed. Prescription thus commenced to run at the time of the alleged tortious act. Mr. Dugas’ failure to obtain a copy of the Demolition Contract until after prescription ran cannot be used to extend the prescription period. As the Hamp’s Defendants contend, the fact Mr. Dugas “undertook an [ ^investigation of the matter by inquiring at City Hall for records authorizing [Hamp’s] to undertake this job,” but turned up nothing is of no merit because he was aware of Hamp’s identity at the time of the alleged conversion.
 

 We turn next to Mr. Dugas’ contention that his is a personal rather than a delictual action, and, therefore, subject to a ten year prescriptive period. He argues that the Demolition Contract between the City and the Hamp’s Defendants contained a
 
 *1065
 
 stipulation
 
 pour autrui
 
 of which he is the third party beneficiary.
 

 Stipulation
 
 pour autrui
 

 In support of his contention that he is the third party beneficiary of the Demolition Contract Mr. Dugas relies on the following provision of that contract:
 

 THE CONTRACTOR AGREES TO:
 

 Salvage all salvageable materials: include[d] but not be limited to wooden door frames, wooden window frames, brackets, doors, windows any decorative millwork structural lumber, bricks, cinder blocks, ironwork, baseboards, roofing slate, tile, shingles, floorboards, glasswork shutters, weather boards, cabinets, bathtubs, plumbing and wiring.
 

 Mr. Dugas argues that the clear implication of the salvage provision is that the materials must be salvaged so that the property owner can retain use of them. He cites
 
 Cooper v. Louisiana Dep’t of Public Works,
 
 03-1074, p. 17 (La.App. 3 Cir. 3/3/04), 870 So.2d 315, 330, for the proposition that Louisiana law “favors stipulations made in favor of third persons.”
 
 Id.
 
 Mr. Dugas also cites the following test enumerated in
 
 Andrepont v. Acadia Drilling Co.,
 
 255 La. 347, 231 So.2d 347 (1969), and applied in
 
 Cooper, supra,
 
 for determining whether a contract provides a benefit for a third person:
 

 (1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge;
 

 (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability Reither personal or real on the part of the promisee to the beneficiary against which performance of the promisee [sic] will protect the former; (b) securing an advantage for the third person may beneficially affect the prom-isee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.
 

 Andrepont,
 
 255 La. at 358, 231 So.2d at 351 (citing J. Denson Smith,
 
 Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui,
 
 11 Tul. L.Rev. 18, 58 (1936))(“Professor Smith’s test”). Mr. Du-gas contends that part (2)(a) of the test applies in this case.
 

 According to Mr. Dugas, Professor Smith’s test was applied, under circumstances similar to those presented in this case, in the
 
 Cooper
 
 case to find a stipulation
 
 pour autrui.
 
 In
 
 Cooper, supra,
 
 the plaintiffs, who were landowners, were found to be third party beneficiaries of a contract between the United States and the Louisiana Department of Transportation and Development (“DOTD”). In so finding, the court reasoned that the United States was “interested in having the DOTD undertake its obligation to compensate the Plaintiffs if construction resulted in the taking of their lands because, otherwise, the United States would be responsible for paying their claims for reimbursement.”
 
 Cooper,
 
 03-1074 at 18, 870 So.2d at 331. Likewise, Mr. Dugas contends that the City was interested in having the demolition contractor, Hamp’s, salvage the materials because the City could otherwise be subject to the property owner’s claim for removal of his salvageable materials. For this reason, Mr. Dugas submits that the City had Hamp’s undertake this duty for his benefit.
 

 The Hamp’s Defendants counter that that the Demolition Contract expressly precludes anyone from obtaining third party beneficiary status under it; particularly, they cite the exclusivity provision of the contract, which provides:
 

 ^EXCLUSIVE NATURE OF CONTRACT
 

 
 *1066
 
 Both the City of New Orleans and the Contractor acknowledges the direct nature of this contract in these services outlined herein and are directed to the original parties of this agreement, who have qualified for participation in the Demolition Program. Rights under this contract; therefore do not extend to any persons other than the original parties hereto.
 

 The Hamp’s Defendants contend that the words of the Demolition Contract precluding third party beneficiary status are clear and explicit.
 
 See
 
 La. C.C. art. 2046 (providing that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”)
 

 The Hamp’s Defendants point out that the general purpose of the Demolition Contract is to protect the public from the unsafe, hazardous condition and that the specific purpose of the salvage provision is to preserve and to recycle the reusable building materials.
 
 [2]
 
 The Hamp’s Defendants further point out that any implied or incidental benefit resulting from the Demolition Contract is in favor of the general public, not the specific property owner who failed to remedy the dangerous condition on his property despite having been notified to do so by the City. They still further point out that the only reason Hamp’s was on the Property was because Mr. Dugas failed to take corrective action.
 

 The Civil Code provides that a contracting party may stipulate a benefit for a third party who is not a party to the contract and who is “called a third party beneficiary.” La. C.C. art. 1978. Under Louisiana law a contract for the benefit of a third party is called a stipulation
 
 pour autrui
 
 — translated as a stipulation “for |nother persons.”
 
 Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary,
 
 05-2864, p. 7 (La.10/15/06), 989 So.2d 1206, 1211, n. 5 (citing
 
 Black’s Law Dictionary
 
 1427 (7th ed.1999)). “The stipulation gives the third party beneficiary the right to demand performance from the promisor.” La. C.C. art. 1981.
 

 Although Article 1978 recognizes that a stipulation
 
 pour autrui
 
 may exist, the Civil Code provides few governing rules.
 
 Joseph,
 
 05-2364 at p. 8, 939 So.2d at 1211 (citing La. C.C. arts. 1978-82). Nor does the Civil Code provide an “analytic framework for determining whether a third party beneficiary contract exists” in a particular case.
 
 Joseph,
 
 05-2364 at p. 8, 939 So.2d at 1211. Each case must be decided on a case-by-case basis, and “[e]ach contract must be evaluated on its own terms and conditions in order to determine if the contract stipulates a benefit for a third person.”
 
 Joseph,
 
 05-2364 at p. 8, 939 So.2d at 1212.
 

 Three criteria are used to determine if a particular contract stipulates a benefit for a third party: (1) the stipulation for a third party must be “manifestly clear;” (2) there must be “certainty as to the benefit provided the third party;” and (3) the benefit must not be “a mere incident of the contract” between the contracting parties.
 
 Joseph,
 
 05-2364 at pp. 8-9, 939 So.2d at 1212.
 
 [3]
 
 In applying these criteria the ultimate determination must be based “on the words of Article 1978 that the contract must ‘stipulate a benefit
 
 *1067
 
 for a third person.’ ”
 
 Joseph,
 
 05-2364 at p. 9, 939 So.2d at 1212. “A person may derive a benefit from a contract to which he is not a party without being a third party beneficiary.”
 
 Joseph,
 
 05-2364 at p. 12, 939 So.2d at 1214. “The party claiming the benefit bears the burden of 112proof.”
 
 Joseph,
 
 05-2364 at p. 9, 939 So.2d at 1212 (citing
 
 Paul v. Louisiana State Employees’ Group Benefit Program,
 
 99-0897 (La.App. 1 Cir. 5/12/00), 762 So.2d 136). A stipulation
 
 pour autrui
 
 is never presumed.
 
 Joseph,
 
 05-2364 at p. 9, 939 So.2d at 1212.
 

 The language of the Demolition Contract demonstrates that Mr. Dugas cannot satisfy the first and second criteria set forth in
 
 Joseph
 
 for a stipulation
 
 pour au-trui.
 
 The contract does not provide a benefit that is “manifestly clear,” and there is no “certainty as to the benefit provided.”
 
 Joseph,
 
 05-2364 at p. 9, 939 So.2d at 1212. The Demolition Contract mentions neither the property owner, in general, nor Mr. Dugas, in particular; rather, the contract mentions only the municipal address at which the demolition services are to be provided: “1201-03 Gov. Nicholls St., New Orleans.”
 

 As noted, Mr. Dugas also contends that the City had a duty to him to salvage the materials in order to avoid a claim for compensation, and the City had Hamp’s undertake that duty for his benefit. A similar claim — that a municipality had a duty to compensate a landowner whose property was demolished for the value of the landowner’s salvageable materials— was rejected in
 
 Davis v. City of Baton Rouge,
 
 383 So.2d 1057 (La.App. 1st Cir. 1980).
 

 In the
 
 Davis
 
 case, the property owner claimed that the City of Baton Rouge’s failure to give him credit for the value of the salvageable materials from his house that was condemned and demolished constituted a taking. Affirming the trial court’s judgment finding of no taking, the appellate court in
 
 Davis
 
 reasoned:
 

 The purpose of the law is to permit the City to remove a condition hazardous to public safety. The removal and disposition of the materials composing the structure is necessary to the accomplishment of that purpose. Ample opportunity is afforded the property owner to take the | ^salvageable materials prior to demolition. His failure to repair the structure, or to salvage the materials therein, can only be construed as an abandonment thereof.
 

 383 So.2d at 1059. For the same reason, Mr. Dugas’ suggestion that the City had a duty to him that was served by including the salvage provision is misplaced. The purpose of the salvage provision was not to benefit the property owner who, in effect, abandoned the materials. Any benefit to the property owner is at best incidental. Hence, in this case, the third
 
 Joseph
 
 criteria — that the benefit not be a mere incident to the contract — is not met.
 

 Summarizing, none of the three
 
 Joseph
 
 criteria is met. The most basic requirement of a stipulation
 
 pour
 
 autrui— that the contract manifest a clear intent to benefit the third party — is lacking in this case. The benefit, if any, to Mr. Dugas was purely incidental. The trial court thus correctly found that Mr. Dugas failed to establish a stipulation
 
 pour autrui.
 

 Unjust enrichment
 

 Mr. Dugas alternatively contends that the Hamp’s Defendants have been unjustly enriched at his expense and that he had ten years to bring a personal action for unjust enrichment. The jurisprudence has identified the following five elements required to establish an unjust enrichment claim: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment,
 
 *1068
 
 (4) an absence of “justification” or “cause” for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. JCD
 
 Marketing Co. v. Bass Hotels and Resorts, Inc.,
 
 01-1096, p. 13 (La.App. 4 Cir. 3/6/02), 812 So.2d 834, 842 (citing
 
 Baker v. Maclay Properties Co.,
 
 94-1529, p. 18 (La.1/17/95), 648 So.2d 888, 897). The Legislature has codified unjust enrichment in La. C.C. art. 2298, which provides: “[a] person who has been enriched without l14cause at the expense of another person is bound to compensate that person.” La. C.C. art. 2298. Article 2298 further provides that “[t]he remedy declared here is subsidiary and shall not be' available if the law provides another remedy for the impoverishment.”
 
 Id.
 

 Mr. Dugas’ unjust enrichment claim cannot succeed because he cannot establish an absence of another remedy at law available to him. La. C.C. art. 2298;
 
 Walters v. MedSouth Record Management, LLC,
 
 10-0352, pp. 2-3 (La.6/4/10), 38 So.3d 241, 242. “The unjust enrichment remedy is ‘only applicable to fill a gap in the law where no express remedy is provided.’ ”
 
 Id.
 
 (quoting
 
 Mouton v. State,
 
 525 So.2d 1136, 1142 (La.App. 1st Cir.1988)). As the Hamp’s Defendants point out, Mr. Dugas had another remedy — a tort claim for conversion that he pled against them in his petitions. It is “of no moment that plaintiffs tort claims have been held to be prescribed. The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment.”
 
 MedSouth Record Management, supra
 
 (citing
 
 Jim Walter Homes v. Jessen,
 
 98-1685, p. 13 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 706). Stated otherwise, “[t]o find that [the plaintiff] ... now has no other remedy and to provide it one under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of action prescribe ... to recover under an enrichment theory.”
 
 Jessen,
 
 98-1685 at p. 13, 732 So.2d at 706. The trial court thus correctly found Mr. Dugas lacked an unjust enrichment claim.
 

 FRIVOLOUS APPEAL DAMAGES
 

 The Hamp’s Defendants in their appellee brief request that this court assess frivolous appeal damages, including attorneys’ fees and costs, against Mr. Du-gas pursuant to La. C.C.P. art. 2133 and La. Uniform Rules, Court of Appeal, Rule 2-[19.is However, the Hamp’s Defendants filed neither an appeal nor an answer to Mr. Dugas’ appeal. Although La. C.C.P. art. 2164 and Rule 2-19 provide for damages for frivolous appeals, such damages are not proper when the party seeking them fails to either appeal or answer the appeal. La. C.C.P. art. 2133;
 
 Legaux v. Orleans Levee Board,
 
 99-2453 (La.App. 4 Cir. 5/17/00), 769 So.2d 19;
 
 Sears, Roebuck & Co. v. Appel,
 
 598 So.2d 582, 584 (La.App. 4th Cir.1992).
 

 Even if the Hamp’s Defendants had filed an appeal or an answer seeking frivolous appeal damages; La. C.C.P. art. 2164 and Rule 2-19, which allow damages for a frivolous appeal, are penal in nature and must be strictly construed in the appellant’s favor.
 
 See Levy v. Levy,
 
 02-0279, pp. 17-18 (La.App. 4 Cir. 10/2/02), 829 So.2d 640, 650. Appeals are favored, and frivolous appeal damages are not granted unless they are clearly due.
 
 Haney v. Davis,
 
 04-1716, p. 11, (La.App. 4 Cir. 1/19/06), 925 So.2d 591, 598. Even when an appeal lacks serious legal merit, frivolous appeal damages will not be awarded unless the appeal was taken solely for the purpose of delay or the appellant’s counsel is not serious in the position he advances.
 
 Elloie v. Anthony,
 
 95-0238, p. 3 (La.App. 4 Cir. 8/23/95), 660 So.2d 897, 899. Applying these principles, we cannot conclude that this appeal is unquestionably frivolous.
 

 
 *1069
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED
 

 [1]
 

 . Although Mr. Dugas also cites
 
 Dumas v. State, Dep’t of Culture, Recreation & Tourism,
 
 02-0563 (La.10/15/02), 828 So.2d 530, in support of his joint tortfeasor characterization, the
 
 Dumas
 
 case involves an unrelated issue regarding an original tortfeasor's liability for subsequent negligent medical treatment. The Louisiana Supreme Court in
 
 Dumas
 
 held that the original tortfeasor was entitled to present evidence of the fault of the negligent health care provider as an affirmative defense at trial. Mr. Dugas’ reliance on the
 
 Dumas
 
 case is misplaced.
 

 [2]
 

 . The Hamp's Defendants also cite a provision of the City’s Building Code that has been amended to require that demolition contracts entered into by the City include a requirement that "demolition contractors recycle all salvageable construction materials.”
 

 [3]
 

 . In
 
 Joseph, supra,
 
 the Louisiana Supreme Court noted that Professor Smith’s test is "an analytical tool to determine whether a stipulation
 
 pour autrui
 
 has been established — not a definitive analysis.”
 
 Joseph,
 
 05-2364 at p. 8, 939 So.2d at 1212 n. 6.