99 So.2d 767 (1957)
AEGIS INSURANCE COMPANY
v.
DELTA FIRE & CASUALTY COMPANY et al.
No. 4500.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
Rehearing Denied February 3, 1958.
Writ of Certiorari Granted March 17, 1958.
*768 Watson, Blanche, Fridge, Wilson, Posner & Thibaut, David W. Robinson, Baton Rouge, for appellant.
Percy J. Landry, Jr., Baton Rouge, for appellees.
ELLIS, Judge.
Robert D. Whitacre, a resident of the state of Minnesota, was the owner of a 1951 Ford Custom Victoria Sedan which was stolen from him in that state on Feb. 2, 1954 and which was insured by the plaintiff company, which on April 21, 1954, paid the said Whitacre $1,072.50, under the terms of the policy insurance loss by theft.
On Feb. 14, 1954, the thief was driving the stolen Ford north on U. S. Highway 61 in St. Charles Parish, Louisiana and the defendant Entrikin was driving his DeSoto Sedan south on the same highway at about 12:30 A.M. when as the result of the admitted negligence of the latter a collision occurred between the two automobiles which completely demolished the stolen Ford. Two days later on Feb. 16, 1954, the defendant insurer, Delta Fire & Casualty Company, paid the thief the sum of $725 in order to settle his claim growing out of said accident.
During the month of June, 1956 plaintiff first learned of the collision and subsequent settlement which was made available through police sources in Denver, Colorado, and thereupon made demand for the sum it had paid to Whitacre as a result of the theft of the Ford automobile. Settlement was refused and plaintiff on the third day of January, 1957 filed suit against Entrikin and his insurer.
Defendant filed an exception of vagueness which was overruled, a plea of prescription of one year and exception of no right of action and with full reservation of all his rights, an answer. The case was then submitted to the District Court upon the agreed statement of facts which we quote:
"It is mutually agreed by and between Percy J. Landry, Jr., Attorney for the Plaintiff, and Charles W. Wilson, representing the firm of Watson Blanche, Wilson, Posner and Thibaut, Attorneys for Defendants, that Delta Fire and Casualty Company is an insurance company organized under the laws of the State of Louisiana with its domicile in the City of Baton Rouge, Louisiana; that Robert D. Whitacre was the owner of a 1951 Ford Custom Victoria Sedan bearing Motor Number B1DA 148967 on February 2, 1954; that it was stolen in the State of Minnesota on that date and Plaintiff had issued a policy of insurance to the said Whitacre insuring the Ford against theft and the policy was in full force *769 and effect on February 2, 1954; that on April 21, 1954, Plaintiff paid the said Whitacre $1,072.50 under the before-mentioned policy had became subrogated in accordance with the Subrogation Clause in the Sworn Statement in Proof of Loss marked P1 and being made a part hereof; that Darhl Albert Hawley was driving said 1951 Ford on U. S. Highway 61 in St. Charles Parish, Louisiana, about 12:30 AM on February 14, 1954, without the consent of Plaintiff and without their knowledge and he was in collision with a 1952 DeSoto Sedan, owned and driven by Defendant Paul P. Entrikin; that said collision happened as described by the said Entrikin in his deposition taken before Janet Parker in Baton Rouge, Louisiana, on February 21, 1957; and as shown on the diagram of accident Report No. 01305 of the Louisiana State Police, a photostat of which is being marked P2 and is being made a part hereof; that the 1951 Ford was completely demolished and its actual cash value at the time of the collision was $925.00; that Defendant Entrikin had his car insured by Defendant Delta Fire and Casualty Company with a public liability and property damage policy, which policy was in full force and effect at the time of said collision, and a copy of said policy is being marked D1 and is being made a part hereof; that Defendant Delta Fire and Casualty Company paid the said Darhl Albert Hawley the sum of $725.00 on February 14, 1954, in order to settle his claim, growing out of said accident and secured a release from the said Hawley, a copy of which is being marked D2 and is being made a part hereof; that Plaintiff did not learn of the above described collision or subsequent settlement made with the said Hawley until June, 1956, through police sources in Denver, Colorado, and this was the first information they had concerning the whereabouts of said Ford since its theft in the State of Minnesota on February 2, 1954; that since June, 1956, plaintiff and Defendant Delta Fire and Casualty Company have negotiated in an effort to settle this matter and the letter being made a part hereof and marked P3 was written by an officer of Delta Fire and Casualty Company to plaintiff."
By agreement of counsel for both parties the exception of no right of action and the plea of prescription were referred to the merits. Briefs were filed and the lower court with written reasons overruled the exception of no right of action and the plea of prescription of one year, and rendered judgment in favor of the plaintiff in the amount of $700, and it is from this judgment that the defendants have appealed.
The only issue on this appeal is on the plea of the prescription of one year which is admitted to be applicable in this case. The law governing this prescription is contained in LSA-C.C. Article 3536 and Article 3537, the pertinent portions of which are hereinafter quoted.
Article 3536 applicable to the question before the court reads as follows:
"The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses. * * *"
The pertinent portion of Article 3537, LSA-C.C., are as follows:
"* * * And in the other cases from that on which the injurious words, disturbances or damage were sustained.
"And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof."
It is plaintiff's contention that the prescription of one year to his cause of action did not begin to run under the first quoted *770 provision of Article 3537 but was controlled by the second quoted provision which he has italicized as follows: "And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof." Plaintiff's position as stated in his brief is that: "Prescription did not begin to run until the month of June, 1956, because it was then that they learned of the 1954 accident and subsequent settlement made by defendant, Delta Fire and Casualty Company. Up until that time, Plaintiff had no knowledge whatsoever of the whereabouts of the 1951 Ford which had been stolen on February 2, 1954, in the State of Minnesota."
It is defendant's contention that the first quoted provision, supra, of Article 3537 is controlling of the time when prescription began to run in the case at bar, and therefore the prescription began to run on the date that the damages were sustained. Defendant by way of note in his brief states: "Plaintiff's argument that the last paragraph of Article 3537 should apply was not treated by the trial judge but appellants submit that Article 10, Revised Civil Code, (should be Article 16) and the ejusdem generis rule of interpretation as applied in McCaleb v. Fox Film Corp., [5 Cir.], 299 F. 48 and Colley v. Canal Bank & Trust Co., [D.C.], 64 F.Supp. 1016, refute the application of that paragraph to this case." We agree with the defendant's argument that the second quoted portion of Article 3537, supra, which was placed in this article by Act No. 33 of 1902 and which states: "And where land, timber or property has been injured, cut, damaged or destroyed, [etc.] * * *," that the word property contained therein is to be construed as referring to offenses or quasi offenses involving injury, damage or destruction to land or timber. The case of Liles v. Barnhart, 152 La. 419, 93 So. 490, 493, involved the alleged taking of oil illegally from land claimed by the plaintiff. In this case the Supreme Court stated:
"Article 3536 of the Civil Code provides that actions for damages for offenses and quasi offenses prescribe in one year, and article 3537, as amended by Act No. 33 of 1902, fixes the time from which this prescription begins to run. This court has repeatedly held, in suits for the value of timber cut and removed from land wrongfully, that the prescription of one year, pleaded under those articles, is applicable; and, when well founded infect, operates as a bar to recovery. There is no reason why those decisions should not apply to the present case. In principle, there is no essential difference, between cutting timber off of land tortiously and selling it, or in manufactured * * * product, and taking oil and gas from land tortiously and selling it. If, in the former instance, the prescription of one year bars the action for the value of the timber removed, for the same reason it should bar an action for the value of oil and gas extracted and taken from land." (Emphasis ours.)
Thus we see that our Supreme Court has held that oil, which is property, when taken illegally from land belonging to another would be governed by the second quoted part of Article 3537 as amended by Act No. 33 of 1902.
The case of Mayer v. Ford, La.App., 12 So.2d 618, 621, decided by this court with the late Judge Dore as its organ, is one involving destruction and damage to one's land caused by the excavation and removal of dirt near the boundary line by the defendant. In this case this court in discussing the prescription of one year under Articles 3536 and 3537 of our Civil Code, stated:
"* * * Thus, it fairly can be stated that the date from which prescription began to run is fixed as October 24, 1939. Under Civil Code, Article 3536, the action has prescribed, unless Civil Code, Article 3537, applies. Under Article 3537, prescription *771 runs where property has been injured, damaged or destroyed from the date knowledge of such damage is received by the owner of the property. The burden of proof as to when knowledge is acquired by the owner of the land rests upon the owner, or, as sometimes expressed, upon the one against whom prescription is pleaded. See Citizens' Bank of Louisiana v. Jeansonne, 120 La. 393, 45 So. 367; Erwin v. Lee Lumber Co., 163 La. 191, 111 So. 673; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654. * * * (Emphasis added) * * *

* * * * * *
"The plaintiffs being charged with constructive notice of the knowledge of their agent Doiron, the Supreme Court of this State had under consideration a plea of prescription under Civil Code, Article 3537, as amended by Act 33 of 1902, and had this to say in the case of Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 942, 54 So. 292, 294: `The language of this act is not different in its import from that of article 613, Code Prac, relating to the action in nullity of judgment for fraud, which is that the suit must be brought "within the year the fraud has been discovered." Construing that article, this court said, in the case of Succession of Dauphin, 112 La. 103-143, 36 So. 287, quoting from the decision of the Supreme Court of the United States in the case of Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807, that:
"`"The burden of proof is on the plaintiff in nullity to show at what date the discovery of the fraud was made, and such information as ought to put the plaintiff on inquiry is sufficient to start the running of the prescription; and in this class of cases the plaintiff is held to stringent rules of evidence."
"`And the court quoted further from that decision the following:
"`"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it."'" (Emphasis added.)
Thus we see this court applying the second quoted portion of Article 3537, which is the 1902 Amendment, to the time which prescription began to run in this case, supra. No distinction was made between the word "land" and "property" contained in the second quoted portion of Article 3537. In fact the court used the word "property" in describing the injuries, damages or destruction claimed to have resulted to plaintiff's land from the excavation by defendant.
We therefore hold that the prescription of one year began to run on the date that the plaintiff's damage was sustained, viz., the date of the collision between the stolen automobile previously belonging to plaintiff's insured and the automobile of the defendant Entrikin, on February 14, 1954. The present suit was filed on January 3, 1957, and, of course, plaintiff's cause of action would long since have been prescribed unless prescription has been suspended under one of the exceptions to the general rule.
If plaintiff's contention is correct that prescription did not begin to run until the month of June, 1956 when it had knowledge of the collision and damage to its insured automobile in 1954, under and by virtue of the applicability of the second quoted portion of Article 3537, of course the plea of prescription would have to be overruled, however, we hold and have held hereinabove that the first quoted part of Article 3537 is applicable to the plea of prescription filed herein and therefore the prescription began to run on the date the damage was sustained or February 14, 1954. Plaintiff contends, and our learned brother below, *772 dealt only with this aspect of the case, that the doctrine of maxim "contra non valentem agere non currit prescriptio" is applicable under the facts of this case and the prescription of one year was suspended until June 1956 at which time the plaintiff learned through police sources of the state of Colorado of the 1954 accident. This doctrine or maxim is defined in Black's Law Dictionary, 4th Edition as meaning: "No prescription runs against a person unable to bring an action." There have been many cases in the state and Federal jurisprudence where this doctrine of "contra non" has been plead. A summary review of some of these cases will give a clear understanding of its meaning and the facts which must be proven as a basis for its application and the suspension of prescription as an exception to the general rule.
It is plaintiff's contention that the doctrine of "contra non" applies in any case where the plaintiff is ignorant of the existence of facts that would entitle him to bring a suit when such ignorance is not willful and does not result from his negligence.
The United States Supreme Court in Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807, in considering the doctrine of "contra non" and the requisites for its application stated:
"Statutes of limitations are vital to the welfare of society and are favored in the law. They are to be found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar.
* * * * *
"The discovery of the cause of action, if such it may be termed, is thus set forth: `And the plaintiff further avers that he had no knowledge of the facts so concealed by the defendant until the year 1872, and a few weeks only before bringing this suit.' There is nothing further on the subject.
"In this class of cases the plaintiff is held to stringent rules of pleading and evidence * * *. A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made a particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. Carr v. Hilton, [C.C., Fed.Cas. 2,437], 1 Curt. 390.
* * * * *
"Concealment by mere silence is not, enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself.
"The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence."
Again in Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F.2d 924, 929, the court citing Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, stated:
"The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitations are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by the defendant only by silence is not enough. He must be guilty of contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable *773 diligence on the part of the plaintiff and means of knowledge are the same in effect as knowledge itself * * * We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute."
In the case of Cox v. Von Ahlefeldt, 105 La. 544, 30 So. 175, 215, supra, our Supreme Court in dealing with a case involving an alleged fraudulent simulation or sale reviewed the previous jurisprudence, some of which had held that the doctrine of "contra non" "has no application in our system of jurisprudence," and at the same time recognized that this doctrine had been applied in other cases in Louisiana and then the court, referring to the ruling in those cases which might be regarded as a departure from the doctrine that "contra non" has no application in our system of jurisprudence stated: "* * * we do not feel called upon to widen the breach for the purposes of the case now before the court." In this case Justice Monroe as the organ of the court in dealing with the contention that prescription had been suspended under the "contra non" doctrine by reason of ignorance resulting from fraud stated [30 So. 216, 217]:
"* * * As matters turned out, however, the arrangements made by Mr. Beirne operate against the plaintiffs as though they had been so designed, and the plaintiffs are entitled to the benefit of the rule which they invoke. But we have found no reason to change our views, as heretofore expressed, upon the subject of the applicability of that rule in other respects. Those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent. `It must appear from the allegation in the petition that the plaintiff had used due diligence to detect the fraud, and that he could not by the use of reasonable diligence have made the discovery sooner.' 13 Enc.Pl. & Prac. p. 245. `The mere statement in the petition that the plaintiff could not have discovered the fraud by the use of reasonable diligence will not relieve him from the bar of the statute. He must state the facts upon which he relies, that the court may see whether they justify and support such a conclusion.' Bremond v. McLean, 45 Tex. 10. It is true that the plaintiffs allege in their petition that `they have, only recently discovered the facts establishing' the simulation of the sale to Mrs. Von Ahlefeldt, and this allegation is supported also by their testimony, in general terms. Upon the other hand, there are certain facts of, which they do not plead ignorance, and of which they could not be ignorant without superhuman indifference to matters of great concern to themselves, and yet the knowledge of which would have informed them, or should at least have put them upon inquiry, as to all that they needed to know for the protection of their rights, save, perhaps, the law of Louisiana. * * * We conclude that the ignorance which prevented the plaintiffs from bringing suit upon their claim was not ignorance of facts, though there were, no doubt, many material facts of which they were not informed, but ignorance of the law of Louisiana, for which neither Oliver Beirne nor these defendants are to be held responsible."
In the case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, 600, the Supreme Court of Louisiana applied the doctrine of "contra non" to a case in which the defendants had continued to pay rent in order to lull the plaintiff into a false sense of security and keep him from discovering the removal of the goods until they had been sold. We quote:
"The defendants interposed also pleas of prescription of 15 days and 1 year, 15 days to the right of the lessor to seize the goods, and 1 year *774 to the suit in damages ex delicto. The first of these pleas need not be noticed further than to say that the plaintiff is not seeking to seize the goods. The other plea has been submitted on the face of the papers, and therefore has to be so disposed of.
"For the purpose, doubtless, of forestalling it, the plaintiff alleged that in order to lull him into a false security, and keep him from discovering the removal of the goods, the defendants continued to pay the rent after all the goods had been removed until all the goods had been sold, and that this suit was brought within the year from and after the last payment of rent. And the question arises whether by these acts of the defendants, whereby the removal of the goods is alleged to have been sought to be prevented from being discovered, the course of the prescription was suspended.
"For the negative it is said that the rule, `Contra non valentem agere non currit prescriptio,' is not recognized in this state; and the case of Cox v. Von Ahlefeldt, 105 La. 543 [584], 30 So. 175, is cited. In that case the court recognized that this rule did apply to certain cases exceptional in their features. A further exception must be recognized, we think, in a case like the present, where the inability of the plaintiff to act was brought about by the practices of the defendants. Otherwise the defendants would be profiting by their own wronga thing inadmissible in law. A defendant, who has kept a plaintiff in close confinement during the prescriptive period so as to preclude his bringing suit, could certainly not be allowed to invoke prescription against plaintiff's suit, and thereby reap the fruit of his own wrong. And between incapacitating a plaintiff by confining his body and incapacitating him by fraudulently lulling his mind into a false security and keeping him in ignorance there is no difference in principle. The one mode of preventing the bringing of suit, if equally effective, is as bad as the other. It is equally a wrong of which the perpetrator cannot be allowed to reap the benefit.
"In the case of Jones v. Texas & P.R. Co., 125 La. 542, 51 So. 582, 136 Am.St.Rep. 339, the court held that prescription began to run only when the cause of action had'manifested itself with sufficient certainty to be susceptible of proof in a court of justice.'
"In Woodward-Wight & Co. v. Engel Land & L. Co., 123 La. 1093, 49 So. 719, the court held that prescription could not begin to run against a redhibitory action for defects in a machine so long as these defects were not understood to be of such a character as to justify the action.
"These two cases are subsequent in date to Cox v. Von Ahlefeldt. Other illustrative cases antedating that case are abundant.
"In Hernandez v. Montgomery, 2 Mart., N.S., 422, prescription of an action upon a marshal's bond for the proceeds of a sale made by him, for which he had failed to account, was held not to have begun to run so long as the right of the plaintiff to these proceeds had not been determined in another suit in which it was contested.
"In Landry v. L'Eglise, 3 La. 219, held that, where a clause in the contract precluded plaintiff from suing until he had exhausted another certain remedy, prescription did not begin to run until he had exhausted this remedy. The court said that the party pleading the prescription'certainly opposes with a bad grace prescription to a demand, which through his own fault, the creditory was prevented from enforcing earlier by suit.'
"The provisions of the Code Napoleon in regard to the interruption and the suspension of prescription, are the *775 same as ours. Our article 3521, reads: `Prescription runs against all persons, unless they are included in some exception established by law.'
"This article is a verbatim translation of article 2251 of that Code. Such being the case, the following quotation from Boyle v. Mann, 4 La.Ann. 170 where the defendant had gone to Mexico to avoid being cited) are apposite:
"`We consider this a proper case for the application of the rule, "contra non valentem." All acts or hindrancesvoies de fait et empechemenscoming from the debtor, which deprive the creditor of the remedy and forum contemplated at the time of the contract, suspend prescription. 2 Troplong, Prescription 725. The Commercial Code of France establishes, for bills of exchange, a prescription similar to that which is here pleaded. It has been held there that this prescription cannot be opposed by the drawer of a bill, who, before the expiration of the 5 years, obtained it confidentially from the holder, and wrongfully kept it beyond the time at which prescription would have accrued. 2 Troplong, loco citato. And again, after the drawer of a bill of exchange has failed, and the bill has been placed by the holder in the hands of the syndic, if the syndic fails or refuses to return it, the prescription of 5 years is suspended from the day of such failure or refusal. Dalloz, 1845, 1st part. p. 29.'
"In Hardee v. Dunn, 13 La.Ann. 161, where the pendency of oppositions had delayed the appointment of a receiver, the court held that prescription could not run.
"And so in Guilliet v. Erwin, 7 La. [580] 581, where absence of the defendant from the state had made it impossible to bring suit.
"By Article 2512 of the Code prescription does not run against the redhibitory action when the seller has knowledge of the defects of the thing sold and fails to make them known to the purchaser.
"In Martin v. Jennings, 10 La.Ann. 553, the court held that prescription does not run so long as the plaintiff is prevented from suing by some act or hindrance of the defendant.
"Referring to that case, and to Boyle v. Mann, supra, this court said in Rabel v. Pourciau, 20 La.Ann. 131, that they fell in that category of cases where the debtor has done same act to prevent the creditor from availing himself of his action.
"In Succession of Farmer, 32 La.Ann. 1037, held that prescription did not run on the claims of an administratrix against the succession represented by her.
"In McKnight v. Calhoun, 36 La.Ann. 408, held prescription did not run on the claims of a succession against the beneficiary heirs so long as one of these heirs was administrator of the succession. The court said:
"`But being forcibly reminded by their knowledge of jurisprudence, of the doctrine of "Contra non valentem," etc., which had been practically recognized in the early stages of our jurisprudence, they hastily retreat on the position that the doctrine is inconsistent with the spirit of our legislation, and they intrench themselves within the protection of the decision in the case of Smith v. Stewart, 21 La.Ann. 67, 99 Am.Dec. 709, in which the court, as then composed, laid down the opinion that the doctrine had no application in our system of jurisprudence, which admits of no other mode of suspending prescription beyond the means enumerated in the Civil Code.
"`It is evident that counsel have not yet considered the decision in the case of the Succession of Farmer, 32 La. *776 Ann. 1037, which unreservedly recognizes the doctrine and has thus restored jurisprudence to the former position occupied by this court.'
"The expression here is evidently too broad, and is not meant to be approved by being reproduced.
"In Succession of Ball, 43 La.Ann. 342, 9 So. 45, held that prescription does not begin to run against an action for reduction of an excessive donation until the solvency or insolvency of the succession has been ascertained.
"It might not be out of place to observe that, in the decision in Cox v. Von Ahlefeldt, one of the justices took no part, and two of them concurred in part and dissented in part; and that the justice to whom the justices who took no part had succeeded on the bench had dissented; and that, at most, the decision is authority only for the proposition that mere ignorance, not brought about or fostered by the machinations of the party opposing prescription, is not good ground for invoking the maxim, `Contra non valentem.' The decisions of Smith v. Stewart, 21 La.Ann. [67] 75, 99 Am.Dec. 709; Soulie v. Ranson, 29 La.Ann. 161, and Succession of Winn, 33 La.Ann. 1392, are opposed to universal jurisprudence and were severely criticized by the Supreme Court of the United States in Levy v. Stewart, 11 Wall. [244] 254, 20 L.Ed. [86] 89, and were expressly overruled by this court in Succession of Farmer, 32 La.Ann. 1037, and in McKnight v. Calhoun, 36 La.Ann. 408.
"In 25 Cyc. 1213, the rule is laid down as follows:
"`The general statement of the rule as to the effect of a fraudulent concealment of a cause of action, where such rule is applicable, is that when a party against whom a cause of action exists in favor of another by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered, or might have been discovered, by the exercise of diligence.'
"In Decennial Dig. § 104, vo. `Limitations,' the rule is stated as follows:
"`Concealment and fraud constitute an implied exception to the statute of limitations, and a party who wrongfully conceals material facts, and thereby prevents a discovery of his wrong, or the fact that a cause of action has accrued against him, is not allowed to take advantage of his wrong by setting up the statute.'
"A case markedly in point is Boyd v. Boyd, 27 Ind. 429, at page 430, where the court said:
"`But it does not occur to us that (for the statute not to run) it needs to be concocted after the accruing of the cause of action, provided it operates afterwards as a means of the concealment, and was so intended. In other language, the defendant must not, at any time, do anything to prevent the plaintiff from ascertaining, subsequently to the transaction out of which the right of action arises, the facts upon which the right depends, either by affirmatively hiding the truth, enhancing the natural difficulties of discovering it, or by any device avoiding inquiry which would result in discovery; and if he do thereby escape suit for a time, the statute of limitations will not run during that time.'
"In Findley v. Stewart, 46 Iowa [655], 656, the syllabus reads:
"`Statute of LimitationsFraud. When a party against whom a cause of action exists, by fraud or actual fraudulent concealment prevents the party in whose favor it exists from obtaining knowledge of it, the statute only commences to run from the time the right *777 of action is discovered or might, by the use of diligence, have been discovered.'
"Same in Bradford v. McCormick, 71 Iowa 129, 32 N.W. 93.
"In First Massachusetts Turnpike Corp. v. Field, 3 Mass. 201, 3 Am.Dec. 124, where the defendant had covered up the defective work in a road so that the defects developed only after the prescriptive period had run, prescription was held not to apply.
"The remarks of the court in that case are apposite in this:
"`On principle there can be but one opinion. In this the moral sense of all mankind must occur. The defendants undertook to perform a piece of business for the plaintiffs, and were paid for it. In the performance of their contract they acted fraudulently and deceitfully, to the detriment of the plaintiffs. Upon the discovery of the fraud, and within the time limited for bringing this species of action, the plaintiffs demand redress of the wrong which they have received. By the pleadings, all this is acknowledged by the defendants; but they say the plaintiffs cannot recover, because more than 6 years have intervened since they received the plaintiffs' money, and since they completed the road in the manner in which they made it. Is this an answer which ought to be deemed satisfactory in a court of justice? I think not. * * * The delay of bringing the suit is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued, until the plaintiff could obtain the knowledge that he had a cause of action. If this knowledge is fraudulently concealed from him by the defendant, we should violate a sound rule of law if we permitted the defendant to avail himself of his own fraud.'
"We do not cite the civil law authorities further than has been done for the reason that the rule, `Contra non valentem, agere non currit prescriptio,' is there recognized in its full scope and operation.
"The decision in Cox v. Von Ahlefeldt in no wise militates against the proposition that a wrong doer cannot be allowed to reap the fruits of his wrong because of the fact that through further fraud and deceit he keeps the injured person in ignorance of what has been done until the prescriptive period has run.
"`The doctrine of equitable estoppel may, in a proper case, be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that when a defendant, electing to set up the statute, previously by deception or any violation of duty toward plaintiff has caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which equity will not allow him to hold.' 25 Cyc. 1016 Limitation of Actions.
"`Where a defendant has, by deception or by any violation of duty towards plaintiff, caused him to subject his claim to the bar of limitations, equity will not permit him to hold the advantage thus obtained.' Clark v. Augustine, 62 N.J.Eq. 689, 51 A. 68.
"`A court of equity may enjoin a defendant in an action at law from using the statute of limitations fraudulently, and this even where the cause of action did not arise out of a fraudulent act, if defendant has misled plaintiff in regard to it.' Holloway v. Appelget, 55 N.J.Eq. 583, 40 A. 27, 62 Am.St.Rep. 827.
"`The general statement of the rule as to the effect of a fraudulent concealment of a cause of action, where such *778 rule is applicable, is that when a party, against whom a cause of action exists in favor of another by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or might have been discovered by the exercise of diligence.' 25 Cyc. p. 1213, Lim. of Actions.
"`Those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent.' Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175.

* * * * * *
"* * * The defendants, having actively contributed to keep the plaintiff in ignorance, are not in a position to say that this ignorance was due to a lack of diligence on the part of plaintiff."
The concurring opinion of Chief Justice Monroe is most interesting and we feel justified in taking the liberty of quoting part of his concurring decree. He stated:
"Monroe, C. J. (Concurring in the decree). I concur in the decree in this case for the following reasons:
"Each of the eight successive Constitutions of this state have, in about the same language, prohibited the General Assembly from adopting any system or code of laws by general reference, and it is well known historically that the prohibition was originally and is now, leveled at the common-law and equity systems which existed, and now exist, in England and in other states of the American Union. The only authority, therefore that a Louisiana court can find for administering `equity,' as that term is generally understood, is contained in the following article of the Civil Code, to wit:
"`Art. 21 * * * In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.' Le Blanc v. City of New Orleans, 138 La. 243, 70 So. [212], 217.
"A portion of the `express' and `positive' law which is to be found in the Code reads as follows:
"`Art. 3457. * * * Prescription is a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the conditions regulated by law. * * *
"`Art. 3521. * * * Prescription runs against all persons, unless they are included in some exception established by law.
"`Art. 3522. * * * Minors and persons under interdiction cannot be prescribed against, except in the cases provided by law. * * *
"`Art. 3536. * * * The following actions are also prescribed by one year.
"`That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses. * * *
"`Art. 3537. * * * The prescription, mentioned in the preceding article runs:
"`With respect to the merchandise, injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived.
"`And in the other cases from that on which the injurious words, disturbance, or damages were sustained. * * *
"`Art. 3540. * * * Actions on bills of exchange, notes, * * * are prescribed by five years, reckoning from the day when the engagements were payable.
"`Art. 3541. * * * The prescription mentioned in the preceding article, *779 and those described above in paragraphs I and II (being the prescriptions, liberandi causa, of one and three years) run against minors and interdicted persons, reserving, however, to them their recourse against their tutors or curators. They also run against persons residing out of the state.'
"It will be observed that the exception in favor of minors and persons under interdiction, contained in article 3522, to the general rule established by article 3521, and the exceptions to that exception (contained in article 3541) emphasize the purpose of the lawmaker to apply article 3521 to `all persons, unless they are included in some exception established by law;' and the same idea is conveyed by other articles such, for instance, as those which except husbands and wives from the rule established by article 3521. The maxim, `contra non valentem agere non currit prescriptio,' appears to have been first applied by this court in a case (Quierry's Ex'r v. Faussier's Ex'rs, 4 Mart. (O.S.) 609), which came up before the adoption (in 1925) of the present Civil Code (re-enacted in 1870), and its application related to an act of the Legislature (passed about the time of, or shortly after, the battle of New Orleans), which prohibited the institution of any civil suit during a period of 120 days, it being held by the court that the prescription against the action in question was suspended during that period. Inasmuch, however, as the law, in establishing the prescription, had done so with reference to the existence of the right of action, and had fixed the limit of time within which that right should be exercised, it would seem to follow that, when the law, then, suspended the right of action, against which alone the prescription was directed, there was nothing left for the prescription to operate on, and that the conclusion of the court might have been reached by so holding, and without invoking any doctrine or principle of equity.
"The next application of the maxim in question was made in Morgan v. Robinson, 12 Mart. (O.S.) [76], 77, 13 Am.Dec. 366 (also decided under the Code of 1808), in which, it appeared that the defendant, in a redhibitory action, had, for a while, absented himself from the state, though it does not appear that plaintiff did not know, or could not have ascertained, where he had gone. The court said, however (referring to the plaintiff, who contended that the prescription against his suit was suspended during the defendant's absence):
"`He relies principally on the maxim, `Contra valentem agere, non currit prescriptio,' as adopted and recognized by the Spanish law, and (as) being an axiom, or first principle of natural law and justice, and therefore applicable to every system of jurisprudence wherein the contrary is not expressly established by legislative power.
"`In this view of the subject we agree with counsel of the plaintiff, and, notwithstanding the express terms of limitation in our Code, it is thought that they ought not to be interpreted as to conflict with the universal maxim of justice.'
"Since the adoption of the Code of 1825 (reenacted in 1870 and now in force), the maxim in question has frequently been invoked, and sometimes applied, and at other times held to be inapplicable, but, always recognized as a rule founded in the jurisprudence, and not the law of the state."
* * * * * *
"In Reynolds v. Batson, 11 La.Ann. 729, plaintiff sued to recover three slaves who had disappeared from his plantation, in Alabama, and were found in the possession of the defendants, in *780 New Orleans, after the period of prescription for their recovery had accrued. The court found, however, that defendants had acquired them in good faith, and that the maxim `Contra non valentem,' etc., could not be applied.
"In referring to that maxim, Merrick, C. J., said:
"`It has been applied to prescriptions liberandi causa in three classes of cases:
"`First. Where there was some cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; a class of cases recognized by the Roman law as proper for the allowance of the utile tempus (citing cases.)
"`Second. The second class of cases are those where there was some condition or matter coupled with the contract or connected with the proceeding which prevented the creditor from suing or acting. * * *
"`Third. The third class of cases is where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. * * *
"`Cases may arise to which it may be proper to spply the maxim, but we do not think the present a case of this kind. * * *'"
We take the liberty of quoting further from the concurring opinion of Chief Justice Monroe because we believe that in this quotation he has so aptly, correctly and concisely stated the foundation upon which the doctrine of "contra non" rests and that by its application in proper cases no new exception is being introduced into our law to the rule that prescription runs against all persons unless they are included in some exception established by law. We quote:
"The opinion in Cox v. Von Ahlefeldt, 105 La. [543] 583, 30 So. 175, does not undertake to overrule the decisions in Succession of Farmer, McKnight v. Calhoun, supra, or Norres v. Hays, 44 La.Ann. 907, 11 So. 462, for the question involved in those cases were not before the court, and it distinctly recognizes the applicability of the maxim, `contra non valentem,' etc., to cases in which a plaintiff has been prevented from exercising a right of action by fraud, perpetrated by a defendant.
"No law was ever enacted which contemplated the defeat of its purpose by fraud, and no court was ever organized which would knowingly permit a litigant to profit by his own wrong. The Civil Code declares that no parol evidence shall be admitted against or beyond what is contained in a written conveyance of real estate, or as to what may have been said before, or at the time of, its execution, or since, but the condition that, if such a conveyance has been obtained by fraud, the fact may be established by parol evidence, in as much a part of that provision as though it had been written in it. `Fraud may, in all cases, be proved by parol,' this court has said. Morris v. Terrenoire, 2 La.Ann. 458; and, when proved, vitiates everything that rests upon it.
"And, so, it being part of the law that one may show by parol evidence that he has been fraudulently deprived thereof, and, upon so showing, may recover his land, it is also part of the law that he may show that he has been fraudulently deprived of his right of action, or of any other right, or property, and, upon so showing, may recover it.
"Being of opinion, then, that one who fraudulently prevents another from exercising his right of action, can take nothing, under the law, by his fraud, I do not consider that, in holding that the prescription of an action, as declared by the Civil Code, is suspended *781 during the time that the possessor of the right of action is so prevented, this court is thereby introducing into our law any new exception to the rule that prescription runs against all persons unless they are included in some exception established by law."
The doctrine of "contra non" is therefore used as an equitable estoppel in those cases in which the facts justify its application.
In the case of Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, 716, the Supreme Court in dealing with a plea of prescription of five years and a contention by the plaintiff that it was suspended by virtue of the failure of the defendant to fulfill a condition written into bonds which it had issued, stated:
"Counsel say that by not providing the promised sinking fund out of which to pay the debt the city committed a wrong, and that to allow the prescription would be to allow her to take advantage of her own wrong; and counsel cite the case of Hyman v. Hibernia Bank, 139 La. [411,] 419, 71 So. 598. That decision makes a clear distinction between the activity, or machinations, of a debtor for lulling his creditor into a false security, and his mere passivity. Mere passivity cannot arrest the course of prescription. `Good faith not being required on the part of the person pleading this prescription,' etc. C.C. art. 3550. The city did nothing to lull plaintiff into a false security or to hinder plaintiff in any way."
In the case of Kennard v. Yazoo & M. V. R. Co., La.App., 190 So. 188, 190, this court with the late Judge Ott as its organ, in discussing the doctrine of "contra non" stated:
"Counsel for plaintiff bases his argument for the interruption of prescription largely on the rule `Contra non valentem agere non currit prescriptio.' This maxim means that prescription does not run against a person who is unable to act, and the rule is an exception to the rather hard and fast Codal provision to the effect that mere silence and inaction on the part of a creditor for a certain time will cut off his right to enforce his claim in the courts. While the maxim of `Contra non valentem' is of common law origin, it has been adopted and applied in a somewhat limited and restricted sense in this State. The rule is a child of necessity brought into being to prevent the injustice of an innocent plaintiff being lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights."
In the case of Smith v. Tyson 193 La. 571, 192 So. 61, 63, we find a full and rather complete discussion by Justice Land as the organ of the Supreme Court of the doctrine of "contra non" as well as a review of the jurisprudence on the subject. In this case the Court stated:
"A review of the jurisprudence on the maxim, `contra non valentem, agere non currit prescriptio,' appears in Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, 602, and the Court extended the doctrine to apply to a case where the inability of plaintiff to act was brought about by the ill practices of the defendants, as otherwise the defendants would have benefited by their own wrong, a thing inadmissible in law.
"Plaintiff, however, in the instant case, makes no contention that her inability to act was brought about by the ill practices of the defendants, but rests her case solely upon her non-residence for many years and ignorance of her property rights.
"The United States Circuit Court of Appeals for the Fifth Circuit had occasion *782 to consider the maxim, `contra non valentem agere non currit prescriptio,' in Arkansas Natural Gas Co. v. Sartor, 78 F.2d 924, at pages 928, 929, said: `* * * Under the law of Louisiana prescription does not run against one who is ignorant of his rights, provided the party pleading it has been guilty of fraud that contributes to the want of knowledge on the part of plaintiff. Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598. But in the absence of fraud, prescription runs against all persons, unless exempted by some provision of the statute. Plaintiffs are not protected by any statutory exemption. In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, it was said that those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent; and again, in Littlefield v. City of Shreveport, 148 La. 693, 87 So. 714, it was said that mere passivity cannot arrest the course of prescription, good faith not being required on the part of the person pleading prescription. La.Civil Code, art. 3550.
"The above-cited decisions of the Supreme Court of Louisiana are in line with the general jurisprudence of the country. Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not tell the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. Anderson v. Gailey, D.C., 33 F.2d 589; Insurance Co. of North America v. Parr, 4 Cir., 44 F.2d 573; Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807; United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will tell the statute.' (Italics ours.)

* * * * * *
"Nor can the mere passivity of the defendants in this case arrest the course of prescription, in the total absence of allegation or proof of machinations upon their part lulling plaintiff into a false security."
Plaintiff on the other hand cites in his brief a number of cases which he says uphold his contention that the doctrine of "contra non" is applicable where the only facts shown are ignorance of the existence of facts that would entitle the plaintiff to bring the suit when such ignorance is not willful and does not result from negligence. We feel that it is necessary that we discuss these cases upon which plaintiff relies as some of them can be distinguished and are not apposite while the others, we believe, are in accord with the cases which we have previously cited, discussed and quoted from at length, and which hold that mere ignorance on the part of the plaintiff alone is not sufficient to tell or suspend prescription, and that mere passivity on the part of the pleader of prescription, such as silence, does not arrest the course of prescriptical.
Plaintiff relies upon the case of Jones v. Texas & Pacific R. Co., 125 La. 542, 51 So. 582, in which the plaintiff's mule was struck by defendant's train and sustained a flesh wound, and after a few days treatment was turned out to pasture and left to get well but instead he died. Suit was filed within one day from the date of death but more than one year from the date the train struck the mule. The Supreme Court held that the damages were not "sustained" under Art. 3537 until the mule died, hence limitation did not begin to run against plaintiff's right to recover from the death of the mule until that date.
*783 Plaintiff also relies upon the case of Perrin v. Rodriguez, La.App., 153 So. 555, 556. In this case the plaintiff had employed the defendant, a dentist, to remove two of his teeth, and some 14 months later when he went to another dentist he discovered that the roots had been left in his mouth and he filed suit for damage which he claimed to have resulted from the dentist's alleged negligence. Suit was filed more than one year after the pulling of the teeth but within one year after discovery of the fact that the roots had not been also removed at the same time. Defendants in the Orleans court of Appeal interposed a plea of prescription of one year. The Court in discussing the question of prescription stated:
"Usually the prescription which, after the lapse of one year, bars a claim for damage ex delicto, runs from the day on which the damage was sustainedCivil Code, Art. 3537but there is an exception where there was no knowledge of the fact that there was damage or where, through some act of the party who caused the damage, the injured person is kept in ignorance of the fact that there has been damage or of the cause thereof.
* * * * * *
"* * * A defendant who either intentionally or unknowingly `succeeds in concealing from a creditor his cause of action cannot be allowed to reap the benefit of his own wrong.' (Syllabus No. 3) Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598. See, also, Bernstein v. Commercial National Bank, 161 La. 38, 108 So. 117.
* * * * * *
"The doctrine that the prescriptive period does not commence until the injured party discovers that he has been damaged is peculiarly applicable to a case such as this where there is such relationship as must exist between a doctor and his patient. It would not do to permit a doctor, who may discover that he has made a mistake which has caused damage to a patient, to continue to treat the patient, concealing the true condition until the accrual of prescription and to then interpose the plea that the action, based on the mistake, comes too late. Whether the doctor discovers the mistake and intentionally conceals it or negligently fails to discover it, is not important, the important fact being that, through reliance on the doctor's skill and ability, the patient has not discovered that the injury which he has sustained resulted from fault of the doctor."
This case, rather than holding that mere ignorance suspends prescription is in accord with the doctrine of "contra non" as expressed in the cases previously cited, for the basis of the holding in this case is actually that because of the close relationship that must exist between a doctor and his patient, the plaintiff through reliance on the doctor's skill and ability has been lulled into a false belief.
Counsel for plaintiff contends that the case at bar fits both of the exceptions commented upon by the court above quoted to the effect that where there was no knowledge of the fact that there was damage or where through some act of the party who caused the damage the party is kept in ignorance of the fact that there has been damage he argues that the mere fact that plaintiff had no knowledge of the fact that there was damage until June 1956 suspended prescription. In the Perrin case, supra, the reason there was no knowledge of the fact that there was damage on the part of the plaintiff was due to the concealment of that fact either intentionally or otherwise by the defendant, and the ignorance of the plaintiff in the Perrin case was due to the concealment of the fact that the roots had not been pulled by the defendant dentist. The Perrin case when read as a whole recognizes the principle of "contre non" as enunciated in the cases previously cited herein and particularly as stated in Hyman v. Hibernia Bank & Trust Co., supra, which is quoted from extensively herein.
*784 Counsel for plaintiff cites and relies upon the case of Walter v. Caffall, 192 La. 447, 188 So. 137, 142. In this case not only did the plaintiffs charge the defendant with acts which constituted legal fraud which acts were without the knowledge, acquiescence or consent of the plaintiffs but they also proved it as the court found that: "The facts as disclosed in this record justify the allegation that those transfers, assignments and arrangements extending over a period of approximately twelve years were bad and done to harrass and held at bay non-assenting creditors and to prevent non-assenting creditors from proceeding against them to enforce the payment of their debts, and that such acts are fraudulent in law as against these non-assenting creditors." The Court then stated that it was of the opinion; "that the plaintiffs under the circumstances disclosed in this record came within the rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a suit, when such ignorance is not willful and does not result from negligence." While the opinion of Judge John T. Hood was adopted as the opinion of the Supreme Court, the organ of the latter court was Justice Land who also was the organ of the court in the case of Smith v. Tyson, supra, which has previously been discussed, and which is one of the leading cases on the doctrine of "centre non." In this case Justice Land said: "Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not tell the statute of limitation. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself."
There is no conflict between the holding in Walter v. Caffall, supra, and that of Smith v. Tyson, supra. In the former case the prescription was not suspended upon the mere ignorance of plaintiffs as to their rights but was specifically founded upon the fraudulent actions of the defendant which extended over a period of 12 years and was specifically found to have been done to harrass and hold at bay non-assenting creditors and to prevent them from proceeding against defendant to enforce the payment of their debts, and the court specifically found these acts as fraudulent in law as against these plaintiffs. The Court in the Walter v. Caffall case, supra, also found that the ignorance of the plaintiffs was not willful nor did it result from any negligence on their part, all of which fulfills the requirements for the application of the doctrine of "contra non".
The case of McGuire v. Monroe Scrap Material Co., 189 La. 573, 180 So. 413, involved a plea of prescription of one year and its suspension under the doctrine of "contra non." We believe this case is basically similar in fact to the case at bar, in that, in both cases we have an object stolen from the owner and then a third party who has committed an act giving rise to a cause of action by the owner or his subrogee against the third party. In the cited case certain machinery had been stolen from the plaintiff in September and December of 1935 and it was not until April 12, 1936, that the plaintiff found some of his stolen machinery in the possession of the defendant. Plaintiff filed suit on January 15, 1937, more than one year after the machines were stolen and this is the basis of the defendant's plea that plaintiff's action is barred by the prescription of one year. Our Supreme Court in considering the plea stated that it would be good if plaintiff had known who committed the theft, when it was committed, and if the suit had been brought against the thief, and cited Carter-Allen Jewelry Co. v. Overstreet, 165 La. 887, 116 So. 222. The court further stated that the plaintiff knew when the thefts were committed but did not know by whom and, hence, no suit could have been filed against the thief. The Court after distinguishing the Carter-Allen Jewelry Co. case relied upon by plaintiffs to sustain *785 their plea of prescription of one year, stated [189 La. 573, 180 So. 415]:
"Here the case is different. Plaintiff sued defendants for the value of his property, not upon a theory that they had stolen it, but because they had unlawfully and fraudulently appropriated it to their own use. Their unlawful and fraudulent appropriation of the property gave rise to plaintiff's cause of action against them for the value of the property. But plaintiff did not know until April 12, 1936, that defendants had converted his property. So it was impossible for him to bring his suit before April 12, 1936, and he did bring it within one year from that date.
"Prescription began to run against plaintiff's action against these defendants on the day he discovered the fraudulent appropriation of his property. The doctrine of maxim, Contra non velentem agere non currit prescriptio, has been frequently upheld by this court, where from conditions the plaintiff could not possibly bring his suit. Cochran v. Violet, 38 La.Ann. 525; McKnight v. Calhoun, 36 La.Ann. 408; Fernandez v. City of New Orleans, 46 La.Ann. 1130, 15 So. 378; Succession of Farmer, 32 La.Ann. 1037. See, also, Liles v. Producer's Oil Co., supra.
* * * * * *
"In the case at bar, plaintiff's cause of action against the defendants for the conversion arose on the date of the conversion, for that was the date on which plaintiff was damaged by the unlawful and fraudulent acts of the defendants. But plaintiff could not sue, could not exercise his right, until he had knowledge of the conversion, which was on April 12, 1936. Plaintiff did not know and was never able to find out when the conversion took place. * * *
* * * * * *
"Under all the circumstances disclosed, and in accordance with the rulings in the cases cited above, we think that prescription against plaintiff's action began to run on April 12, 1936, which was the date on which he discovered that defendants had converted his property."
The facts in the McGuire case and the discussion and quotation therefrom hereinabove place it practically on all fours with the case under consideration except that in the latter the cause of action by the plaintiff against the third party, defendant therein, is different from the cause of action by plaintiff McGuire against the third party, Monroe Scrap Material Company, however this is immaterial as both pose the same problem, viz., when did the prescription of one year begin to run against the third party defendant. We refer to the defendants in the case at bar and in the cited case as third parties in view of the fact that the plaintiff had a cause of action against the thief first and then against the defendant for an entirely different cause of action. In the McGuire case as well as in the case at bar the prescription applicable to an action for recovery and/or damage by the plaintiff against the thief was suspended under the doctrine of contra non by virtue of the fact that plaintiff's ignorance of the whereabouts or location of his movable property was brought about by the fraudulent conversion and concealment thereof, by the thief. The prescription applicable for the recovery of a movable which has been stolen, even in the hands of an innocent third purchaser, is ten years. See LSA-C.C. Articles 3506, 3507. In this article three years prescription was read into it by the Supreme Court in the case of Securities Sales Co. v. Blackwell, 167 La. 667, 120 So. 45; Art. 3509, Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75; Rio Hondo Land Co. v. Gibbs, La.App., 49 So.2d 76. However, in the McGuire case the Court was not dealing with a suit for the recovery of the stolen movable but with one against a third party, the defendant *786 therein, who had purchased the property from the thief in violation of the law with regard to such a transaction, and who had sold or otherwise disposed of the movable property to such an extent that it could not be recovered by the owner in its original state, and hence the facts gave rise to a cause of action in favor of McGuire against the third party defendant for the value of the property converted by the latter. We have the same situation in the case at bar in that plaintiff is not suing for the recovery of his automobile because it was destroyed in the collision which was attributable to the negligence of the defendant Entrikin, which gave rise to a cause of action in favor of the plaintiff against the third party defendant and his insurer for the value of the automobile negligently destroyed by the defendant Entrikin.
Let us examine the McGuire case further with a view of ascertaining exactly the reasons underlying the holding of our Supreme Court that the doctrine of contra non was applicable in this case and that therefore the prescription of one year ordinarily applicable to plaintiff's cause of action against the defendant therein was suspended or tolled until April 12, 1936, which was the date that plaintiff first had knowledge of defendant's conversion of his property. In this case the Court stated its reasons as follows [189 La. 573, 180 So. 415]: "the doctrine or maxim contra non valentum agere non curit prescriptio, has been frequently upheld by this court, where from conditions the plaintiff could not possibly bring his suit." Stated in another way the court meant that conditions or facts necessary before the doctrine of contra non could be invoked existed in this case, and that where such facts existed or were present the doctrine of contra non had been frequently upheld by our Supreme Court. Let us attempt to ferret out the actual facts which the Supreme Court found present as a basis for its application of the doctrine of contra non to McGuire's cause of action against the Monroe Scrap Material Co.
The facts upon which the Supreme Court depended in the application of the doctrine of contra non occurred prior to and including or rather up to the time on April 12, 1936 that McGuire knew or learned that the Monroe Scrap Material Company had converted his property. We agree with learned trial judge below that any facts which McGuire found out subsequent to April 12, 1936, for example, that the Monroe Scrap Material Company had violated the law in failing to exact from the seller of this material the statement required by law, as the Supreme Court specifically held that when he learned that his property was in the possession of the Monroe Scrap Material Co. on April 12, 1936, or rather what was left of the property, that prescription began to run against his action on that date, and therefore the facts which the Supreme Court held were sufficient to support the application of the doctrine of contra non in this case occurred prior to the date of April 12, 1936. On that date the suspension of the one year prescription in favor of McGuire, the plaintiff, as to his cause of action against the Monroe Scrap Material Company was at an end by virtue of his having located the remains of his property in the possession of the Monroe Scrap Material Company. The theft and willful concealment of McGuire's property from the moment it was stolen until he had definite knowledge of its location, conversion or destruction under the doctrine or maxim of contra non protected him fully from the loss of any cause of action that he might have, not only against the thief but also against third parties that might have come into existence after the theft and to the date that he had knowledge of such cause of action. That is the holding of the Supreme Court in the McGuire case for it said the doctrine applied from the date of the theft and thereby suspended prescription as to McGuire's cause of action for the value of his property against a third party, Monroe Scrap Material Company, until the dateApril 12, 1936that McGuire first had knowledge that he had *787 such a cause of action. It is not necessary in the case of stolen property for the third party defendant to be guilty of any acts necessary as a prerequisite to the application of the maxim or doctrine of contra non. In other words, the plaintiff is protected by the doctrine of contra non in that all prescription is suspended from the date of the theft as to any cause of action against the unknown thief or unknown third party until the plaintiff has sufficient knowledge of said cause of action upon which to act. His inability to act was by reason of ignorance resulting from fraud.
In the case at bar the theft and concealment of the plaintiff's automobile by an unknown thief under the doctrine of contra non suspended the effect of prescription as to any cause of action plaintiff had against the unknown thief and also suspended the prescription of one year as to the unknown cause of action against the unknown third party defendant Entrikin and his insurer, for the negligent destruction of his stolen automobile on Feb. 14, 1954, until June 1956 when the plaintiff first learned of the collision and subsequent settlement by the insurer for the negligent destruction of his stolen automobile by the insured, which information was made available at that time through police sources in Denver, Colorado. As was said by the Supreme Court in the McGuire case, plaintiff could not sue, could not exercise his right, until he had knowledge of the collision or accident which he received in the month of June, 1956. Plaintiff's ignorance of his right of action against the defendant was due to a fraud practiced upon him, it is true, not by the defendant but by the unknown thief who stole his automobile. This is sufficient to protect the plaintiff from the loss of any right of action by prescription for any damage to or destruction of the stolen automobile until the date that he learned of such right of action provided the plaintiff used due diligence.
In summary, the cause of action herein was created by the wrongful act of the tortfeasor. Prescription, which would ordinarily have run against the owner's rights to recover damages commencing with the date of the wrongful act, does not do so when as here it has been suspended by the active fraud and concealment of the whereabouts of the property, whether by the tortfeasor or another. The basic reason that prescription was initially suspended, even before the negligent act creating the present cause of action in tort, was because the owner could not enforce his rights concerning his property because its whereabouts had been actively concealed from him. This basic reason for the application of the "contra non" doctrine is not affected by the circumstance that the stolen property is damaged or destroyed by the negligent act of yet a third person, for the whereabouts of the property still remain unknown to the owner through the fraud and active concealment of another, the original thief. Prescription does not commence running against his action to recover for damage to his concealed property until he actually learns of its location or until he should have done so by the exercise of reasonable diligence.
Counsel for defendant complains of the finding of the lower court that the plaintiff in this case exercised due diligence. The District Court stated: "It is a reasonable assumption that the theft was reported to the police authorities in Minnesotaand that, under modern crime detection procedures, it was in due course reported by the Minnesota police authorities to the police authorities of the other forty-seven states, and perhaps Canada and Mexico. That this was done is evidenced to some extent at least by the fact that plaintiff eventually learned the facts from police sources in Denver."
While the District Court also stated that there was no other proof in the record, in view of the fact that knowledge of the *788 collision and settlement by the defendant insurance company from police sources in the state of Colorado where the plaintiff insurance company was domiciled is sufficient to establish the fact that the theft was reported to the police in Colorado or the latter received the information regarding the collision and settlement from other police sources, to whom the theft had been reported.
Counsel for defendant suggests that in the exercise of due diligence plaintiff could have reported the theft to the police authorities in the forty-seven other states, however, we believe that in these modern times the report of a theft of an automobile to a state police organization is sufficient as one may reasonably expect a dissemination of the news of such theft by that state police organization to the other states.
For the above and foregoing reasons the judgment of the District Court is hereby affirmed.